188 So.2d 432 (1966)
Joseph RICHARD, Plaintiff and Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, and the Firestone Tire & Rubber Company, Defendant and Appellees.
No. 1742.
Court of Appeal of Louisiana, Third Circuit.
July 1, 1966.
E. M. Nichols, Lake Charles, for plaintiff-appellant.
Hall, Raggio & Farrar, by Richard Cappel, Lake Charles, for defendant-appellees.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit for workmen's compensation benefits. The district judge sustained an exception of prescription. From a judgment dismissing his suit, plaintiff has appealed.
The substantial issue on appeal is whether certain employee group disability insurance benefits, and accrued vacation time, paid by the employer to plaintiff, interrupted prescription.
*433 Plaintiff's petition alleges that on or about December 5, 1963, while working for the defendant, Firestone Tire & Rubber Company, he injured his back, lifting a heavy board. He continued working through January 6, 1964, since which date plaintiff alleges he has been disabled due to a work-connected injury.
This suit was not filed until February 23, 1965. Defendant filed an exception of prescription based on LSA-R.S. 23:1209, which pertinently provides that claims for workmen's compensation shall be barred unless filed within one year after the accident or the injury develops; or, if compensation payments have been made, within one year from the time of making the last payment.
The suit was obviously filed more than one year after the accident and over one year after plaintiff's injury developed. Plaintiff's contention is that after he stopped work on January 6, 1964, the defendant made certain payments which plaintiff understood, and was led to believe, were compensation benefits; the last of which payments was made on February 27, 1964, and interrupted prescription for the filing of this suit on February 23, 1965.
The facts show that under the contract between the Firestone Tire & Rubber Company and the labor union, of which plaintiff was a member, a group insurance plan for hourly-rated employees provided benefits of 80% of the weekly wage for 18 weeks, during disability caused by any accident or sickness, whether work-connected or not. This policy provided further, that in the event benefits were also payable under the Workmen's Compensation Act, the group disability benefits would be reduced by the amount payable as workmen's compensation benefits.
The procedure used by Firestone was as follows: If an employee became disabled from a non-job-connected cause, Firestone paid the full 80% of his wage in group disability benefits. However, if the disability was work-connected, and the employee was also entitled to recover workmen's compensation benefits, Firestone's group disability plan paid 80% of the wages, less the amount the employee was entitled to receive as workmen's compensation benefits. The compensation benefits were paid by separate check by Firestone's workmen's compensation insurer, Liberty Mutual Insurance Company.
In the instant case, when plaintiff quit work on January 6, 1964, Firestone understood that plaintiff's disability was work-connected and that he would receive workmen's compensation benefits from the compensation insurer, Liberty Mutual Insurance Company. Hence, on February 5, 1964, Firestone mailed to plaintiff its first check in the sum of $188.78. The voucher for this check shows that $74.88 represented 80% of plaintiff's wages for the first week, during which plaintiff would not receive workmen's compensation; and $113.90 represented 80% of wages for the period January 14, 1964, through February 2, 1964, less $5 per day workmen's compensation. ($35 per week.)
On February 12, 1964 Firestone mailed plaintiff a second check, in the sum of $39.88, representing 80% of his weekly wage, less $35 for workmen's compensation benefits, covering the period February 3 through February 9.
At this point Firestone received medical reports that plaintiff's back condition was not work-connected and hence concluded workmen's compensation would not be paid. Accordingly, on February 19, 1964, Firestone mailed plaintiff a check in the sum of $188.45, of which $53.45 represented payment under the group disability plan for the period February 10 through February 14, and the balance of $135 represented the balance due plaintiff to date under the group disability plan, by reason of his failure to receive any workmen's compensation benefits.
Plaintiff's employment with Firestone was terminated and the last check was mailed to him on February 27, 1964, in the sum of $79.64, representing payment for accrued *434 vacation to which he was entitled on his termination.
Plaintiff contends he did not know, and was not informed by Firestone, that these payments received by him were for "sick benefits" or accrued vacation rather than workmen's compensation. It is plaintiff's contention that it was not until May 28, 1964 that he learned, in a letter received from Firestone, that his disability had been ruled non-work-connected and that the payments he had received were other than workmen's compensation.
Counsel for plaintiff cites Saltalamacchia v. Strachan Shipping Corporation, 156 So.2d 291 (La.App. 4th Cir. 1963; certiorari granted but limited to other matters) in which plaintiff suffered a work-connected heart attack. He quit work, but was paid a portion of his wages for 12 weeks, without any explanation by the employer as to whether these payments were workmen's compensation or mere gratuities. The court held that since the wages were not earned, and there was no explanation by the employer as to their nature, it is presumed that they were made in lieu of workmen's compensation, interrupting prescription. The rationale of the Saltalamacchia case is that an employer should not be permitted to lull the injured employee into the erroneous belief that he is receiving workmen's compensation payments. To allow such would enable the unscrupulous employer to make unexplained payments for a few months and thereby defeat a just claim for compensation benefits. This same idea was expressed by our Supreme Court in Thornton v. E. I. DuPont DeNemours & Co., 207 La. 239, 21 So.2d 46 (1945).
The Saltalamacchia case is readily distinguishable from the present matter. Here, the trial judge correctly found as a fact the employee was advised the payments he received were not workmen's compensation benefits. The court held:
"According to the evidence, shortly after the first payment was made to Mr. Richard, he called Mr. John Goux, Firestone's personnel supervisor, about this check. Mr. Goux testified Mr. Richard questioned the correctness of the amount and at this time he explained to the plaintiff that any workmen's compensation benefits to which the plaintiff was entitled would be paid direct to him by Liberty Mutual Insurance Company, and that the payment that he had received was the difference between the group insurance plan and the workmen's compensation benefits. The plaintiff acknowledged that this telephone conversation took place, although he denied that he received any explanation as to the difference between the payments under the group insurance plan and workmen's compensation benefits.
"It is difficult for the Court to believe that the plaintiff was not informed as Mr. Goux testified, about the difference in the amounts of the benefits and the manner in which they would be paid by Firestone's personnel office and by Liberty Mutual Insurance Company, because that was the exact purpose of the conversation."
Furthermore, the evidence shows plaintiff is 39 years old and has a sixth grade education; that employees are notified of the group insurance plan through pamphlets and notices on bulletin boards; and that the first three checks showed on their face they were for "Employee Accident & Sickness Weekly Benefits".
Plaintiff was not "lulled" into the mistaken belief that he was receiving workmen's compensation. He was advised by Firestone as to the nature of the payments. Hence the Saltalmacchia and Thornton cases, supra, have no application here.
It is perhaps unnecessary to state that plaintiff does not contend there was any actual or implied agreement between the parties that the group insurance benefits, or the pay for vacation time accrued, would be considered in lieu of workmen's compensation. This case clearly does not fall within *435 the jurisprudence as to such agreements. Bigham v. Swift & Company, 81 So.2d 28 (La.App. 2nd Cir. 1955) and cases cited therein.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.