282 So.2d 771 (1973)
Whitney Paul RYDER, Plaintiff-Appellee,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellant.
No. 4273.
Court of Appeal of Louisiana, Third Circuit.
September 18, 1973.
*772 Davidson, Meaux, Onebane & Donohoe, Lafayette, by Edward S. Abell, Jr., Lafayette, of counsel, for defendant-appellant.
Dubuisson & Dubuisson by James T. Guglielmo, and Leon S. Haas Jr., Opelousas, for plaintiff-appellee.
Before FRUGE, SAVOY and DOMENGEAUX, JJ.
SAVOY, Judge.
This is a workmen's compensation case. Plaintiff, a native of Louisiana, had been employed as an ironworker under a Louisiana contract of employment with The Mosler Safe Company. A few days prior to the day of the accident of January 15, 1970, plaintiff had been sent to Atlanta, Georgia, on a job for his employer. On the said date, plaintiff was severely injured when a plate of sheet metal fell on him, with the primary injuries being fractures of both legs. On January 21, 1970, while plaintiff was in a hospital in Atlanta, Georgia, he signed a document termed "Standard Form of Agreement as to Compensation". This was evidently a routine form executed under the Georgia Workmen's Compensation Law, whereby the salient facts regarding plaintiff's employment and injuries were set forth, and wherein it was stated that claimant would receive compensation at the maximum rate of $50.00 per week based on an average weekly wage of $235.00; and that compensation would be paid at the rate of $50.00 per week "until terminated in accordance with the provisions of the Workmen's Compensation Law of the State of Georgia".
After plaintiff was discharged from the hospital in Georgia, he returned to Louisiana, and was placed under the care of Dr. F. Lionel Mayer, an orthopedic specialist of Opelousas, Louisiana. Plaintiff remained under the care of Dr. Mayer until June 1, 1971, at which time he was discharged because he had reached maximum improvements, with the doctor advising him that if he should experience any unforeseen difficulties, he was to report back. At the time of discharge, Dr. Mayer was of the opinion that plaintiff had a 16% permanent disability of the right leg and a 4% permanent disability of the left leg, which in Dr. Mayer's opinion rendered plaintiff totally and permanently disabled from performing his duties as an ironworker. That plaintiff is totally and permanently disabled under the provisions of the Louisiana Compensation Law is not disputed.
Plaintiff continued to receive compensation benefits at the rate of $50.00 per week until on January 20, 1972. On that date, without prior notice, the payments were discontinued. The plaintiff thereupon retained his present counsel in Louisiana. His attorneys engaged in correspondence with the defendant, Insurance Company of North America, the insurer of plaintiff's employer, and much of the correspondence is in evidence, and consists of demands for resumption of workmen's compensation payments, discussion regarding jurisdiction and other applicable law, and some tentative statements relative to possible settlement value. On April 13, 1972, while the correspondence was not completely broken off, employer and insurer requested by letter to the Georgia State Board of Workmen's Compensation a hearing "to determine the right of the employer and insurer to terminate Workmen's Compensation benefits to the employee for total disability" and to restrict benefits to those for specific member injuries. On April 26, 1972, plaintiff filed this suit seeking total and permanent disability benefits and penalties and attorney's fees under LSA-R.S. 22:658. On May 19, 1972, prior to trial in this matter, the Georgia Workmen's Compensation Board held a hearing before a Deputy Director on the application of the *773 insurer and employer to terminate total disability benefits. The trial of this case was held on June 7, 1972, before any findings had been made by the Georgia Workmen's Compensation Board. However, by agreement of counsel, the findings of the Georgia Workmen's Compensation Board after the date of trial were made a part of the record herein. These revealed that on June 23, 1972, a deputy director for the Georgia Board made a finding of fact that there had been no change in plaintiff's condition of total disability, and that he had specific member disabilities, and he thereupon denied the application to terminate total disability benefits, and directed defendants (employer and insurer) to resume and continue compensation payments at the rate of $50.00 per week. The Deputy Director further made an additional award directing defendants to pay specific member benefits for disability to the lower extremities. On July 24, 1972, the full Georgia Workmen's Compensation Board reviewed the deputy's findings, and on August 29, 1972, issued an order eliminating the deputy's award for specific member injury payments, but otherwise affirmed the deputy's award for benefits for total disability. No appeal was taken from this action of the Georgia Board.
Prior to trial of the instant suit, defendant had filed an "Exception of Jurisdiction" and an "Exception of Prescription." These were taken up concurrently with the trial by the trial court. For written reasons assigned, the trial court overruled defendant's exceptions, and, on the merits, entered an award in favor of plaintiff for total and permanent disability benefits at the rate of $49.00 per week from the date of injury, not to exceed 500 weeks, with credit to defendant for compensation payments made by it, and further awarding plaintiff statutory penalties and attorney's fees in the amount of $2,500.00. Formal judgment was signed on October 6, 1972.
From the judgment of the trial court defendant appealed to this court, and plaintiff has answered the appeal praying for an increase in attorney's fees.
There is no issue in this case as to the compensability of plaintiff's accident, his entitlement to maximum workmen's compensation benefits, or to the fact that he is totally and permanently disabled from returning to his regular work.
The only issues in this case are those presented by defendant's "Exception of Jurisdiction" and defendant's "Exception of Prescription."
In its "Exception of Jurisdiction" defendant, in effect, argues that the trial court is without jurisdiction over this action because plaintiff had elected to receive and has been receiving benefits under the Georgia Workmen's Compensation Law, and has thus waived his rights to claim benefits under the Workmen's Compensation Law of the State of Louisiana. Though defendant termed the exception as an exception to jurisdiction, it is obvious that defendant treated the exception as an exception of res judicata, as did the learned trial court.
It is, of course, well settled that where the contract of hiring is made in Louisiana, but the injury occurs elsewhere, this State has a legitimate interest and may entertain jurisdiction over the subject matter and apply its compensation statute. Mattel v. Pittman Construction Company, 248 La. 540, 180 So.2d 696 (1965); Ohlhausen v. Sternberg Dredging Company, et al., 218 La. 677, 50 So.2d 803 (1951).
The contention of defendant should also be considered in the light of the principle as set forth in Babineaux v. Southeastern Drilling Corporation, et al., 170 So.2d 518 (La.App. 3 Cir. 1965), cert. den., 247 La. 613, 172 So.2d 700. This rule is that more than one state's compensation statute may apply to a single principal injury, so long as each state has a relevant interest in affording a compensation remedy. This rule also provides, of course, that *774 a double recovery is not permitted, and benefits paid under one statute are deducted from those allowable under the other statute.
Defendant contends, however, that even though Louisiana would undoubtedly have the right to apply the Workmen's Compensation Law of Louisiana to the plaintiff's injuries had he originally made application in Louisiana, the fact is that he accepted benefits under the Georgia Compensation Statute, and the Georgia adjudication barred plaintiff from claiming benefits under the Louisiana Act under the ruling in Magnolia Petroleum Company v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1944).
In Louisiana the doctrine of res judicata is announced by our Civil Code Article 2286 in these terms:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action, the demand must be between the parties, and formed by them against each other in the same quality."
In interpreting this law, it is firmly established that the doctrine of res judicata is stricti juris, and any doubts as to its application must be resolved in favor of maintaining the action. McNeal v. State Farm Mutual Automobile Insurance Company, La., 278 So.2d 108 (1973). Quinette v. Delhommer, 247 La. 1121, 176 So.2d 399 (1965).
It is quite evident that it was the employer and insurer who obtained the decision from the Georgia Workmen's Compensation Board, and it should be pointed out that this was only after plaintiff's counsel was insisting on his rights to benefits under the Louisiana law, as suit had been filed under the Louisiana law. Plaintiff himself did not seek a ruling or adjudication before the Georgia Workmen's Compensation Board. This alone makes the Louisiana doctrine of res judicata inapplicable. Further, the Magnolia case has been severely restricted, and it has been considerably discredited by the case of Industrial Commission v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947). In that case, the United States Supreme Court ruled that a judgment awarding compensation would not bar the claimant from seeking additional benefits in another State if the laws of the State granting the first award did not expressly prohibit such additional relief. We are cited to no authority by defendant that the State of Georgia had any prohibition against additional relief. The Magnolia case is further rendered inapplicable, because in Magnolia, the employee pressed a claim for judgment in the first State. That is not the case here, as has already been pointed out. It was only after plaintiff obtained Louisiana counsel and was insisting on his rights to benefits under Louisiana law, that employer's insurer sought to get a decision of the Georgia Workmen's Compensation Board terminating total disability benefits, and it should be noted here that the Georgia Board found that plaintiff was totally disabled.
Defendant's plea of prescription is clearly without merit. Defendant contends that since payments of compensation were made to plaintiff under the Georgia law and not the Louisiana law, and since more than two years have passed from January 15, 1970, the date of the accident, until April 26, 1972, the date the suit was filed herein, that the claim was prescribed under the provisions of LSA-R.S. 23:1209. In this connection, defendant cites the case of Rowley v. Lumberman's Mutual Insurance Company, 247 So.2d 135 (La.App. 4 Cir. 1971). However, that case involves a suit for medical expenses and disability compensation benefits, and payment of medical expenses only had been made within the year previous to filing of suit. The court there held that medical payments form no part of compensation benefits, and payments of such were not payments within *775 the contemplation of the prescriptive provision quoted above. That is entirely different from the case here. Here plaintiff was actually receiving payments for disability, and the cited prescriptive provision referring to payments under this chapter describe a workmen's compensation claim as distinguished from a tort claim or one for disability insurance benefits. See Richard v. Liberty Mutual Insurance Company, 188 So.2d 432 (La.App. 3 Cir. 1966). Even if the payments were not strictly under the Louisiana Workmen's Compensation Act, it is clear that though they were paid under the Georgia Act, they were so much in lieu of compensation under the Louisiana Act (like payment of unearned wages) as to constitute a recognition by the employer of the compensable disability and thus interrupt the accrual of prescription. See Scalise v. Liberty Mutual Insurance Company, 84 So.2d 88 (La.App. 1 Cir. 1955).
The purpose of the one year prescriptive period is to protect employers from the burdensome litigation of stale claims. Defendant and employer in the instant case certainly had knowledge of plaintiff's claim, because he was paid compensation. Surely by these payments the employer cannot lull the employee into a false sense of security, causing him to withhold suit until after the time had expired, and then invoke the time bar to defeat compensation. See Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972).
The plea of prescription is not well founded.
Regarding penalties and attorney's fees, it is undisputed that plaintiff was totally disabled at the time of the termination of the benefits. At the time of this termination, even under the definition of total disability as provided by the Georgia law, there is no showing that the discontinuance of compensation was justified. It was only after termination of compensation benefits, and after plaintiff's Louisiana counsel demanded the resumption of compensation payments that the defendant applied to the Georgia Board for permission to terminate benefits on the basis of a change of condition. The evidence here does not show any medical opinion that would justify the discontinuance of benefits. The findings of the Georgia Board show that there was never any question as to plaintiff's total disability, even within the meaning of the Georgia Act. (We are not informed by counsel as to the Georgia definition of total disability.) There was no reasonable justification for the termination of benefits, and the action of defendant in doing so was arbitrary and capricious. Accordingly, defendant is liable for penalties and attorney's fees under the provisions of LSA-R.S. 22:658.
The lower court awarded $2,500.00 as attorney's fees. Plaintiff, in its answer to the appeal, requests an increase in attorney's fees for services in connection with this appeal. We think the request has merit and will increase the attorney's fees to $3,000.00. Thibodeaux v. Associated Distributing Company, 260 So.2d 46 (La. App. 3 Cir. 1972).
For the reasons assigned, the judgment appealed from is amended to increase the award of the attorney's fee therein from $2,500.00 to $3,000.00, and in all other respects it is affirmed with appellant to pay all costs.
Amended and affirmed.