341 So.2d 17 (1976)
Brison WILLIAMS
v.
INTERNATIONAL LUBRICANT CORPORATION.
No. 7882.
Court of Appeal of Louisiana, Fourth Circuit.
December 14, 1976.
Concurring Opinion January 12, 1977.
Writ Refused March 11, 1977.
*18 Jerome Friedman, Metairie, for plaintiff-appellant.
John T. McMahon, New Orleans, for defendant-appellee.
Before REDMANN, LEMMON, GULOTTA, SCHOTT and BEER, JJ.
LEMMON, Judge.
Plaintiff has appealed from a judgment dismissing his suit for workmen's compensation benefits on an exception of prescription. The principal issue is whether weekly wage continuation payments, which defendant transmitted to plaintiff, served to suspend the running of prescription during the period of the payments. Because *19 the trial court ruled in favor of defendant after hearing evidence on the exception, we accept all of the evidence favorable to the prevailing party.
While working as a laborer in defendant's industrial plant on January 9, 1974, plaintiff fell on his right shoulder and side. He reported the accident and was treated for several days by the company doctor, but continued working regularly. He missed one day later in January because of shoulder pain and two days in April when he consulted a doctor for back pain. On June 11, 1974 plaintiff consulted an orthopedic surgeon, who diagnosed a herniated lumbar disc, phlebitis and pulmonary embolism, and recommended that plaintiff not return to work at the time. His last day of work was June 7.
Plaintiff continued under the doctor's care and underwent surgery for the embolism in late July. In October he was released to return to work with the recommendation that he not continue doing the same type of work, which included loading heavy drums. When plaintiff reported for work, defendant's personnel manager required an examination by the company doctor, who diagnosed a congenital anomaly of the lumbosacral spine and declared that plaintiff was not employable.
Shortly after plaintiff had discontinued work in June, 1974, defendant began transmitting weekly payments to plaintiff in the amount of $65.00 each. Defendant's personnel manager testified that these payments were sick pay insurance benefits paid under an optional group insurance policy to which both the employer and employee made premium contributions. The particular benefit plan provided for payment of benefits when an employee sustains loss of regular salary by becoming disabled as a result of sickness or accidental injury, whether work-related or not. The amount of benefits was a percentage of income, up to a maximum of $65.00 per week, reduced by the amount of weekly benefits payable under workmen's compensation law (which by coincidence at the time of plaintiff's claim was also $65.00). These payments were continued through October, 1974. This suit was filed in July, 1975.
The original petition asserting disability as met by an exception of prescription. Plaintiff then filed a supplemental petition alleging (1) that the disabling condition resulted from the January, 1974 accident and from "numerous other accidents occurring thereafter, on or before June 7, 1974", and (2) that workmen's compensation payments were made by the defendant from June 26, 1974 through October 11, 1974. The exception of prescription was reurged, tried and maintained. Hence this appeal.
Any claim based on any accident occurring before the June 7, 1974 date stated in the petition was prescribed, in the absence of allegations or proof of reinjury or aggravation subsequent to that date, as in Fontenot v. Great Am. Indem. Co., 127 So.2d 822 (La.App.3rd Cir. 1961), or of delayed manifestation of disabling injury, as in Wallace v. Remington Rand, Inc., 299 La. 651, 86 So.2d 522 (1956).[1] There was no allegation or proof of reinjury or aggravation after June 7. Moreover, plaintiff testified that he had stiffness continuously in his shoulder, back and leg from the time of the January fall, and he was therefore aware of the manifestations of his disabling injury and should have known (at least by June, when disc problems were diagnosed) that he had suffered a compensable injury, regardless of the fact that a somewhat different diagnosis was made in October. Therefore, there is nothing in the pleadings or evidence in this record upon which one could conclude that prescription commenced to run later than June, 1974.
*20 In this respect we reject plaintiff's argument that the issue in this case is one of causation which must be decided on the merits and not on an exception of prescription. For purposes of considering the exception, we assume a causal relationship between a work-connected accident and the injury that manifested itself as disabling in June, 1974. [2]
The case therefore turns on plaintiff's contention that prescription was suspended by the $65.00 weekly payments transmitted by defendant to him, which he reasonably construed to be workmen's compensation benefits. In essence his contention is that payment through defendant of wage continuation benefits, shortly after disability and in the same amount as compensation benefits, misled him to his detriment into reasonably withholding suit through October, and that defendant should be estopped from asserting that the one-year peremptive period began to run before October.
Since we assumed, for purposes of prescription, that workmen's compensation benefits were due and payable after June 7, 1974, the critical question is whether plaintiff was reasonable in believing under the circumstances that the payments were workmen's compensation benefits so that he reasonably delayed, to his detriment, asserting his cause of action during that period.
We view the resolution of this issue as one of law, essentially involving the burden of proof. The defendant who pleads prescription in a compensation case has the ultimate burden of proof. Although plaintiff's claim under the allegations of the original petition was prescribed on the face of the pleading, the amended petition alleged payment of compensation benefits from June through October. Under the allegations of this amendment, which related back under C.C.P. art. 1153 to the date of filing of the original petition, the claim was not prescribed, and the burden of proving prescription was on defendant. Furthermore, once plaintiff introduced evidence that shortly after the disabling injury he received, from or through the employer, wage continuation payments which could reasonably be construed to be compensation benefits, the burden was on defendant-exceptor to present evidence showing that plaintiff was not reasonable in that belief.
The practical difference in the position of the parties demands this placement of the burden. An employee, with a layman's knowledge of statutory entitlement to some type of benefits after an injury occurs on the job, is easily subject to intentional or unintentional delusion when the employer shortly after disability initiates payment of benefits in an amount equal to or greater than maximum compensation benefits. Under such circumstances it is reasonable for an employee (who receives no contrary indication from his employer at that time) to believe that the payments are in fulfillment of his employer's statutory obligation to compensate him for the loss of salary. It is also reasonable that during the period of the payments the employee would refrain from consulting counsel in the belief that he is receiving the benefits to which he is entitled. On the other hand, the employer is well aware of the difference between compensation benefits and sick pay benefits, and in order to claim that prescription ran during the payment of sick pay benefits, the employer must show that the employee was not reasonable in such a belief. [3] *21 Thus, in Byrd v. Kaiser Aluminum and Chem. Corp., 314 So.2d 448 (La.App.4th Cir. 1975) the employer successfully pleaded prescription by showing that the employee "applied for non-industrial accident benefits from the outset" and thereby himself categorized the claim as one which was not compensable. [4] And in Richard v. Liberty Mut. Ins. Co., 188 So.2d 432 (La.App.3rd Cir. 1966), cited in the reasons for judgment in this case, the trial court found as a fact that the personnel supervisor had explained at plaintiff's request the difference in benefits after payment was commenced.
On the issue of the reasonableness of plaintiff's belief in this case, the personnel manager testified that he explained all benefits under the group insurance policy to plaintiff at the time of hiring; that a pamphlet describing the optional plan for sick pay supplemental insurance is given to each new employee; that plaintiff authorized the payroll deduction of $1.90 per month for this particular benefit plan; and that plaintiff never made a claim for or was paid workmen's compensation, but rather was paid sick pay supplemental benefits.
The benefit checks, which were not introduced into evidence but were referred to in testimony, indicated payment in connection with a claim under group coverage, but did not state the payments were not workmen's compensation. Nothing in the testimony of the personnel manager indicates that he informed plaintiff after June 7 that compensation was not due or that the $65.00 payments were not workmen's compensation benefits.
Even accepting all of the evidence presented by defendant on the issue and disregarding that presented by plaintiff, we cannot conclude that plaintiff was unreasonable in his belief that the payments were compensation benefits.
We do not suggest lack of good faith by this defendant. The record does not even hint at this. The problem is that defendant innocently set up circumstances under which the employee could reasonably believe he was receiving compensation benefits and thus defer to his detriment the filing of the compensation suit. Since the defendant did not show that plaintiff was notified these payments were not compensation or that plaintiff should have otherwise known this, we hold defendant under these circumstances is estopped from asserting that the five months, during which it transmitted weekly payments to plaintiff, constituted part of the one-year peremption period.
For these reasons, the judgment of the trial court is reversed, and it is now ordered that the exception of prescription be overruled and the case remanded for further proceedings.
REVERSED AND REMANDED.
SCHOTT, J., concurs and assigns reasons.
BEER, J., dissents and assigns reasons.
SCHOTT, Judge (concurring in the result).
We are confronted here with a judgment on an exception of prescription, not a judgment on the merits. It is understood that plaintiff at trial on the merits must prove that he became disabled in June as the result of an incident or accident suffered in the course and scope of his employment. For our purpose here, however, we assume that the herniated lumbar disc, phlebitis and pulmonary embolism which were diagnosed *22 in June and which ultimately disabled him, were job related so that plaintiff was, as a matter of law, entitled to workmen's compensation payments. In other words, we assume an employee who was permanently disabled from a job related accident and who, a short time thereafter, began to receive checks for the amount to which he was entitled under the law and circumstances.
Defendant's answer in support of its prescription argument is that these were not workmen's compensation payments at all but were benefits under a sickness or accident insurance policy which was available to employees who wished to contribute toward the premiums. Defendant showed that it was self employed for workmen's compensation purposes but the sickness or accident insurance policy was sold to it and administered by Travelers Insurance Company; the checks sent by defendant to plaintiff were issued by Travelers and not by defendant; at the time plaintiff was employed a brochure was handed to him explaining the insurance policy; $1.90 was taken out of plaintiff's salary each week to cover his voluntary contribution toward that insurance policy; and defendant signed a form which proved to be an application for benefits under the insurance policy. However, as pointed out in the majority opinion, the portion of the form signed by plaintiff was blank for the most part. Items left blank included the date last worked, whether hospitalized or whether returned to work, and the date if so when he became disabled, when was he confined to the hospital, cause of disability and "if disability due to accident, state when, where and how it occurred."
While it is arguable that the failure to answer those questions, especially the last, connotes a negative response so that plaintiff in effect was negating the possibility that his disability was due to accident; it is arguable with equal force that since plaintiff did not answer the question at all no inference can be drawn either way.
Thus, with the initial assumption for my purpose here that plaintiff was disabled and entitled to receive workmen's compensation benefits of $65 per week, starting in June, 1974, I find the facts to be: 1) Plaintiff received from defendant payments of $65 per week; 2) Defendant did not consider these weekly payments of $65 per week as workmen's compensation benefits but instead benefits from an accident and sickness insurance policy for which plaintiff had contributed a portion of the premium; but 3) Plaintiff thought these $65 checks were workmen's compensation benefits and had no reason to believe otherwise.
I would conclude that under these circumstances defendant is precluded as a matter of equity, i.e., estopped from invoking the plea of prescription ordinarily available one year after the date when the disabling injury develops. This estoppel resulted essentially from defendant's failure or neglect to make it clear to plaintiff that the payments were not workmen's compensation payments.
This is not a case where an employer did something with the result that the employee was lulled into thinking he was receiving compensation payments when he was not. This is a case where the employer is assumed to have owed compensation to an employee who had no reason to think otherwise, the employer caused the employee to be paid the amount to which he was entitled in compensation payments, and the employer did nothing to inform the employee that these were not compensation payments, albeit, the employer knew or considered them to be something other than compensation payments.
BEER, Judge (dissenting).
I respectfully dissent, being of the view that the able trial judge was correctly guided by the holding in Richard v. Liberty Mutual Insurance Company, 188 So.2d 432 (La.App.3rd Cir., 1966).
I view the majority opinion as imposing an onerous and, thus, unreasonable burden on the employer. There is no evidence whatsoever to counter the clear proof that Mr. Williams was properly advised of the type of coverage afforded to him and for *23 which deductions were made against his weekly pay check. In my view, the benefit payments were obviously being made as a result of Mr. Williams' group coverage claim, and he either knew or should have known that this was so. The majority opinion observes that "defendant did not show that plaintiff was notified that these payments were not compensation ..." I can find no authority for the imposition of such a requirement. Yet, the majority concludes that "these circumstances" estop defendant from relying upon the undisputed fact that the payments were, as noted on the checks, "in connection with your claim under your group coverage."
I respectfully dissent.
LEMMONS, Judge, concurs in denial of the application for rehearing and assigns reasons.
In its application for rehearing defendant argues that it is being penalized because plaintiff failed to answer the pertinent question about occupational disability on the form request for benefits.
That argument has validity only to the extent that the result reached by this court would probably have been different if plaintiff had answered all questions. If he had indicated a non-occupational disabling injury, the Byrd case would control, and if he had indicated an occupational injury, the sick pay insurer would probably have declined to pay benefits and the problem would never have been presented. However, the benefits were in fact paid based on the incomplete request, and the payments were transmitted by defendant to an employee who contends he was then entitled to workmen's compensation benefits because of disability caused by a job-related injury (a contention we accept as true for purposes of this exception, but which plaintiff may very well be unable to prove at a trial on the merits).
We have simply held in this case that the employer under these circumstances (that the employer unintentionally set up) must show by presentation of facts that the employee was unreasonable in believing the payments were made in discharge of the employer's obligation to pay workmen's compensation. On this point we have accepted all of the facts shown by the employer (and disregarded all facts presented by the employee), but we conclude that these facts simply do not show unreasonableness.[1]
NOTES
[1] The original compensation act, requiring suit within a year of the "injury", was amended to require suit within a year of the "accident", except when the injury does not develop immediately after the accident. Nevertheless, the amended act requires suit within one year from the time the injury develops and within two years from the date the accident occurred. Malone, Louisiana Workmen's Compensation Law and Practice § 384 (1951).
[2] We distinguish the case of Bigham v. Swift & Co., 229 La. 341, 86 So.2d 59 (1956), relied upon by plaintiff, in which the claimant continued to work for about seven months after the accident and filed suit within a year thereafter, contending delayed manifestation of disability. The court simply held that the exception of prescription should be overruled because the suit was filed timely after the alleged late development of disability and that the issue of causation between the accident and the subsequently developing disability should be determined at the trial on the merits.

The Bigham case would be controlling here only if the date of plaintiff's suit was more than one year after the January accident but was less than one year after the June manifestation of disability.
[3] In reargument before the five-judge panel, defendant pointed out many facts and circumstances supporting the reasonableness of its belief that the injury was not work-related, thus explaining why it characterized the claim and furnished the form application for sick pay supplemental benefits. The more important issue, however, is the reasonableness of the claimant's belief that the payments were in discharge of the employer's workmen's compensation obligation.
[4] Although defendant in this case contends that plaintiff applied for sick pay benefits, the section of the three-part application completed by plaintiff was mostly left blank, including those questions as to the cause of disability and the description and location of any accident. Thus, this case is distinguishable from the Byrd case in that this employer did not show this employee could not reasonably have believed in applying for wage continuation that his claim was compensable.
[1] It is the reasonableness of the employee's belief that is relevant, because the employee is the one who loses substantive rights by liberative prescription. By an adverse decision on an exception of prescription the employer merely loses a possible chance to avoid defending the claim on the merits.