|, STEWART, J.
Plaintiff, Evelyn Kennedy, appeals the trial court’s judgment denying her workers’ compensation claim on the basis of prescription. For the reasons cited herein, we affirm.
FACTS
Evelyn Kennedy (“Kennedy”) was employed as a meat wrapper in the meat department of the Farmerville Brookshire Grocery Store. On or about July 27, 1995, she injured herself while lifting a forty pound box of chicken. The accident was unwitnessed, and it was not reported until March 11, 1999, ten days after Kennedy was terminated. Incidentally, Kennedy also suffered an injury in 1990 for which she was compensated until January 1991. In August of 1995, Kennedy began receiving short term disability benefits (“STDB”) rather than workers’ compensation benefits. She opted to pursue STDBs after speaking with Brookshire’s comptroller, Randy Modesitt, who recommended *354 STDBs after being told by Kennedy that the nature of her injuries stemmed from the 1990 injury for which she had already received workers’ compensation. Following her termination, Kennedy applied for workers’ compensation benefits. Brook-shire denied that an accident occurred in 1995 and claimed that any claim for workers’ compensation prescribed one year after the alleged accident. Brookshire classified the payments Kennedy received as “sick pay.”
The trial court found that Kennedy had not met her burden of proving that her injuries were caused by a work related accident. Additionally, the court found that even if her injuries were caused by a work related accident, prescription had run on the workers compensation claim and for any claim 12for payment of medical expenses. In its finding, the court rejected Kennedy’s argument that she was lulled into a false sense of security that her workers’ compensation claim was suspended while she received short term disability payments.
DISCUSSION

Standard of Review

Factual findings in workers’ compensation cases are subject to the manifest error/clearly wrong standard of review. Alexander v. Pellerin Marble & Granite, 93-1698 (La.01/14/94), 630 So.2d 706; Nolan v. Rawls Farming Co., 35,086 (La.App.2d Cir.10/31/01), 801 So.2d 524. In applying this standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). If the factfinder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551.

Burden of Proof

Whether a claimant has carried his burden of proof and whether his testimony is credible are questions of fact to be determined by the WCJ. Harris v. Coushatta Indus. Sand, Inc., 31,977 (La.App.2d Cir.06/16/99), 741 So.2d 143. A worker’s pre-existing condition does not bar his recovery under Louisiana Workers’ Compensation law. Guillory v. U.S. Fidelity & Guaranty Ins. Co., 420 So.2d 119 (La.1982); Harvey v. BE & K Construction, 30,825 (La.App.2d Cir.08/19/98), 716 So.2d 514. A claimant’s burden of proof in establishing a causal relationship between a job related accident and a disability is by a preponderance of the evidence. Durham v. Plum Creek Manufacturing, 32,888 (La.App.2d Cir.05/10/00), 760 So.2d 564.
In determining whether the worker has discharged the burden of proof, the trier of fact should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of his testimony. A worker’s testimony alone may be sufficient to discharge the burden of proof provided that two essential elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the incident. Jackson v. Creger Automotive Co., Inc., 29,249 (La.App.2d Cir. 04/02/97), 691 So.2d 824, writ denied, 97-1436 (La.09/26/97), 701 So.2d 984.

Analysis

Kennedy claimed to have suffered a work related injury on July 27, 1995. Be *355 fore this alleged incident Kennedy had a long history of on the job injuries while at Brookshire. On July 8, 1985, she injured her tailbone after slipping on a piece of fat while walking to the cooler in the meat department. She strained her back while lifting a 40 pound box of leg quarters on September 23,1988. A few years later, on June 4, 1990, |4Kennedy injured her back opening the freezer in the meat department. Kennedy testified that she reported each one of these incidents to her employer. However, she did not report the July 27, 1995, incident until March 11, 1999, after she was terminated from Brookshire.
Kennedy was treated at Union General Hospital on July 27, 1995, for what the hospital records show as “shoulder pain occurring on and off for approximately one week,” but she did not tell the doctors that she had been injured at work. Additionally, despite Kennedy’s claims that she was injured on July 25, 1995, Brookshire’s employee time sheets reveal that she was not at work on that date.
In September of 1995 Kennedy reported to her supervisor, Ron Linder, that she was suffering pains from a 1990 injury that occurred before he began working with the company. Kennedy repeated this complaint to Allen Turner, the store manager, who also was not at Brookshire in 1990. Because neither Allen Turner or Ron Lin-der worked for Brookshire in 1990, they referred Kennedy to Randy Modesitt, the workers’ compensation adjuster. Modesitt then contacted CNA, Brookshire’s insurer in 1990, to determine whether Kennedy could receive benefits for a 1990 injury for which she had previously received benefits. CNA informed Modesitt that their last payment for the 1990 injury was in January 1991 and that the claim had prescribed and no benefits were available.
Despite these circumstances, on September 21, 1995, Brookshire had Kennedy fill out an accident report to be sure that Kennedy was complaining of an injury from 1990 and not a new injury that was an 1 .¡aggravation of a preexisting condition. In the report, Kennedy specifically mentions that she was injured in 1990. There was no mention of a July 27, 1995, accident. In fact, Kennedy did not mention a 1995 injury to Dr. Sidney Bailey, who treated her in 1995. She did not mention a 1995 injury to Dr. Doug Brown, who began treating her in 1996 and treated her until February 11,1999.
Obviously, Kennedy’s claim for workers’ compensation related to any 1990 injury had prescribed. Nonetheless, because Kennedy was a good employee who was experiencing financial difficulties, Brook-shire offered to pay the deductibles and co-payments on her personal health insurance so that she would have no out of pocket expenses.
On September 22, 1995, Kennedy filed for STDB. She actually filed for STDB a month earlier on August 2, but then refiled after being informed that prescription had run on her 1990 claim. Kennedy received STDB until October 22,1995.
Kennedy, who is from the Philippines, asserts that Brookshire took advantage of her poor understanding of English to confuse her. She also alleged that Brookshire altered documents to bolster its case that a 1995 accident never occurred.
The controversy surrounding Brook-shire’s alteration of documents pertains to the addition of “D/A 9/1/95” by Brook-shire’s claims adjustor, Eddie Crawford, to the accident report filled out by Kennedy long after she completed it. Crawford explained that he only added the date because a date needed to be input into the computer in order to get checks issued to | fipay Kennedy’s deductibles, and September was the month Kennedy first contact *356 ed them. Apparently, the trial court found Crawford’s explanation credible.
Additionally, the trial court found that the medical evidence presented placed serious doubt on Kennedy’s contention that she suffered a work related injury on July 27, 1995. The trial court recognized that although Kennedy’s accident was un-witnessed, that factor alone could not bar her from meeting her burden of proof. The court found that Kennedy’s actions following September 27, 1995, did not support her contention that she had a work related accident. Of particular concern to the court was the fact that Kennedy did not inform any of the doctors who treated her from 1995-1999 about a September 1995 accident. Ultimately, the court found that she did not meet her burden of proof. We find no manifest error in the court’s findings. This assignment is without merit.

Prescription

Assuming arguendo that Kennedy met her burden of proof that she did suffer a work related injury on July 27, 1995, we find that her claim fails on the basis of prescription. La. R.S. 23:1209(A), provides in pertinent part:
In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this chapter or unless within one year after the accident a formal claim has been filed as provided in Sub-section B of this section and this chapter. If such payments have been made in any case, the limitations shall not take effect until the expiration of one year from the time of making the last payment ...” (Emphasis added).
|7Likewise, La. R.S. 23:1209(C) provides that all claims for medical benefits shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this chapter. The burden falls upon the claimant to show that the running of prescription was interrupted or suspended in some manner. Lima v. Schmidt, 595 So.2d 624 (La.1992).
Kennedy argues that she was lulled into a false sense of security by Brook-shire that prescription on her workers’ compensation claim was suspended while she received STDBs and cites Brook-shire’s behavior as misleading. For instance, Kennedy asserts that Brookshire took advantage of her lack of ability to communicate clearly in English and led her to file for STDBs instead of workers’ compensation. Next, Brookshire’s misleading behavior was supported because the amounts awarded under workers’ compensation and STDB were exactly the same. Additionally, Brookshire labeled Kennedy’s benefits as “sick pay” rather than workers’ compensation or STDB. Finally, Kennedy contends that the 1995 injury was merely an aggravation of the injury incurred in 1990, and that she should have been offered workers’ compensation.
In support of her argument that an employer may not lull an employee into a false sense of security and thereby cause him to withhold suit until after the prescriptive period, Kennedy cites Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972). Kennedy also argues that where an employer initiates payment of disability benefits in the amount equal or |sgreater than maximum workers compensation benefits, it is reasonable for the employee who receives no contrary indica *357 tion from his employer at that time to believe that payments are in fulfillment of his employer’s statutory obligation to compensate him for loss of salary. Also, it is also reasonable that during the period of the payments, the employee would refrain from consulting counsel in the belief that he is receiving the benefits to which he is entitled. Williams v. Intern. Lubricant Corp., 341 So.2d 17 (La.App. 4th Cir.1977), writ refused 342 So.2d 872 (La.1977).
Brookshire counters by asserting that there is no merit to Kennedy’s argument that the payment of deductibles and co-payments served to interrupt prescription on her workers’ compensation claim. All payments were simply benevolent and made in relation to the 1990 accident because the 1995 accident was not reported until 1999. Brookshire argues that it did not lull Kennedy into a false sense of security believing that her workers’ compensation claims were suspended.
In Causby v. Perque Floor Covering, 97-1235 (La.1/21/98), 707 So.2d 23 the Louisiana Supreme Court, reversing the Fifth Circuit, stated that:
until the court of appeal opinion in this case, no reported Louisiana decision has held that an employee has been lulled into a false sense of security which would justify a delay in filing a workers compensation claim where the employer or claims adjuster tells the employee that he is not entitled to further benefits. At that point, the employee is put on notice that his only avenue for recovery is to hire an attorney and file a suit within established time limits.
Dupaquier, supra, is inapposite to the instant case in that Brookshire did not mislead Kennedy regarding the nature of the benefits she received. The Urecord reveals that Kennedy knew the difference between STDB and workers’ compensation, and that Brookshire went to great lengths to explain such differences. Moreover, Kennedy received STDB in 1986 and 1991 for non-work related surgeries, so she could not have been confused between workers’ compensation benefits and STDB in 1995. In fact, she applied for STDB in 1997 following the removal of a lump in her breast.
The trial court found that the appellant told Brookshire about a 1990 accident for which they told her that her claim for workers’ compensation had prescribed. The court stated that even if the appellant is correct in saying she was intentionally told she did not have a claim, she was put on notice to hire an attorney to pursue the matter. The court weighed the evidence and noted serious questions about the appellant’s credibility. Of particular concern to the court was the peculiar timing of Kennedy’s filing of her workers’ compensation claim — ten days after she was fired by Brookshire. Even if Brook-shire’s actions suspended prescription, the trial court stated that this case is still prescribed because the last day Kennedy received benefits for the accident was October 22, 1995, and her claims for workers’ compensation would have prescribed the following year. Finally, the court noted that assuming that prescription was interrupted when Brookshire paid the last deductible on March 7, 1996, at the Orthopedic Clinic, this case is still prescribed because suit was not filed until March 11, 1999. The trial court was not manifestly erroneous. Thus, this assignment has no merit.
| ^CONCLUSION
For the reasons cited above, we affirm the judgment of the trial court. Costs of this appeal are assessed to the appellant.
AFFIRMED.