750 So.2d 474 (2000)
Monroe J. NUNN, Plaintiff-Appellee,
v.
CBC SERVICES, INC. and Louisiana Workers' Compensation Corporation, Defendant-Appellant.
No. 32,491-WCA.
Court of Appeal of Louisiana, Second Circuit.
January 26, 2000.
*475 Egan, Johnson & Stiltner By Thomas D. Travis, Baton Rouge, Counsel for Defendant-Appellant.
Wallace & Long By William R. Long, Shreveport, Counsel for Plaintiff-Appellee.
Before NORRIS, C.J., and BROWN, CARAWAY, PEATROSS and KOSTELKA, JJ.
NORRIS, Chief Judge.
The employer, CBC Services Inc., and its compensation carrier, Louisiana Workers' Compensation Corporation ("LWCC"), appeal a judgment of the Workers' Compensation Judge awarding the claimant, Monroe J. Nunn, medical benefits, penalties *476 and attorney fees. For the reasons expressed, we affirm in part and reverse in part.

Factual background
Nunn went to work for CBC in February 1997 as a millwright helper. His wage was approximately $250 a week. The record regarding his employment and injury was entered by joint stipulation:
[I]f called to testify, Monroe J. Nunn would testify as follows:
That Monroe J. Nunn * * * was unemployed and performed no work activities for at least three months prior to his employment beginning for CBC Services Inc. as a millwright helper on February 7, 1997; That he never sustained any sort of trauma or difficulties with the right or left arms, hands or wrists prior to May 1, 1997; On May 1, 1997 he struck his wrist and forearm area of his right arm on the sideboard of his work truck; Following such event a mass developed on his right wrist; Sometime following, he began experiencing wasting or atrophy of the muscles in his hand and numbness in his little and ring fingers on his right hand;
That following the accident of May 1, 1997, he continued employment with CBC Services Inc. for one week; Following that time he has not engaged in any work activities at all except for one week in which he attempted to work cutting logs for Danny Weaver from Ashland, Louisiana; He has engaged in no other work activity. R.pp. 29-30.
LWCC has paid Nunn indemnity benefits of $166.67 per week since the accident was reported on September 5, 1997.
The stipulation does not indicate when Nunn's atrophy and numbness began. However, an office note from his general practitioner, Dr. Gregory Bell, dated October 13, 1997, states:
Monroe injured his hand back in April of this year. He hit it on the sideboard of a truck. Since then he has had some numbness and tingling in the fourth and fifth fingers and he has had muscle wasting around the thumb.
On Dr. Bell's referral, Nunn went to Dr. John Knight, an orthopedic surgeon in Shreveport, on October 16. Dr. Knight recited Nunn's history as follows:
The patient gives a history of placing his hard hat in his truck on the day of injury when he bumped his right wrist and forearm. * * * After the injury the patient immediately had a cyst arise at the volar radial aspect of his right wrist. He has had numbness in his little and ring fingers since that time as well as significant weakness.
Dr. Knight confirmed the presence of the reported symptoms and, after electrodiagnostic testing, diagnosed severe ulnar neuropathy at the right elbow. He stated in deposition that this was consistent with the type of trauma sustained in May 1997. In January 1998 Dr. Knight operated to excise a traumatic aneurysm from the wrist. He further stated that Nunn's condition was getting worse.
Dr. Knight elaborated on the cause of Nunn's condition, stating that the accident was "one plausible cause," together with "the type of work that he did, which is heavy labor." He identified cumulative trauma as "the most common reason" for ulnar neuropathy. He was certain that Nunn's work for CBC was the cause of the injury, and that the May 1997 trauma made it symptomatic.
Dr. Knight further explained that the symptoms of numbness and tingling did not worsen for several months because the condition is progressive; in Nunn's case, it probably first involved motor nerve fibers (resulting in muscle loss from disuse) and only later involved sensory nerve fibers (resulting in numbness and tingling). He recommended elbow surgery, ulnar nerve decompression, to correct the neuropathy and prevent further deterioration.
At LWCC's request, Nunn was examined by Dr. Michael Genoff, an orthopedic surgeon in Alexandria, on November 18, *477 1997. Dr. Genoff confirmed that Nunn had symptoms of nerve compression on his right side, but he found similar symptoms, though much less pronounced, on the left side as well. Although Nunn had no complaints with his left arm, Dr. Genoff stated that many people have symptoms worse on one side. He opined that Nunn's problem pre-existed the accident, as he had never seen ulnar neuropathy caused by a blow to the wrist. He also stated that trauma-induced neuropathy generally manifests itself within 72 hours of injury, not several months later. Dr. Genoff concluded that Nunn's neuropathy had been developing for a year or more prior to the examination, and was not a result of his work for CBC.
Dr. Knight disputed Dr. Genoff's opinion regarding the progression of the atrophy; in his experience, denervation generally takes six to eight months to develop, but can occur more quickly. He was certain that this condition resulted from microtrauma sustained on the job.
Based on Dr. Genoff's opinion, LWCC refused to authorize the ulnar nerve decompression surgery. Nunn filed the instant disputed claim on March 30, 1998, seeking payment for that surgery as well as statutory penalties and attorney fees.
The WCJ reviewed the stipulations and medical evidence, concluding that Nunn's ulnar neuropathy was pre-existent but the accident accelerated the symptoms. The WCJ stated, "The parties agree that * * * Nunn never sustained any trauma or difficulties with the right or left arm, hands or wrists prior to [the] May 1, 1997 accident." The WCJ therefore ordered LWCC to provide the ulnar decompression surgery and assessed penalties of $2,000 and attorney fees of $2,000.

Discussion: Causation
By its second assignment of error, LWCC urges the WCJ committed manifest error in finding that Nunn's ulnar neuropathy was work-related.
An employer is liable for compensation benefits and necessary medical expenses to any employee who received personal injury due to an accident arising out of and in the course of his employment, or who contracts an occupational disease. La. R.S. 23:1031, 23:1031.1. The claimant must show by a preponderance of the evidence that he sustained injury from a work-related accident or an occupational disease. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992); Cubley v. Steel Forgings Inc., 26,507 (La.App. 2 Cir. 1/25/95), 649 So.2d 117. The claimant does not necessarily have to establish the exact cause of the disability, but he must demonstrate by a preponderance of the evidence that the accident had a causal connection with it. Quinones v. U.S. F & G, 93-1648 (La.1/14/94), 630 So.2d 1303; Allen v. Misco Paper, 27,146 (La.App. 2 Cir. 8/23/95), 660 So.2d 175. Disability may be presumed to have resulted from an accident if, before the accident, the claimant was in good health, but commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterward, provided that there is sufficient medical evidence to show a reasonable possibility of causal relation between accident and disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. Walton v. Normandy Village Homes Ass'n Inc., 475 So.2d 320 (La.1985); Qualls v. Stone Container Corp., 29,794 (La.App. 2 Cir. 9/24/97), 699 So.2d 1137, writ denied 97-2929 (La.2/6/98), 709 So.2d 736. Pre-existing disease or infirmity does not disqualify a claim if the work-related injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Id. The finding of causation is factual in nature and subject to the manifest error rule. Bruno v. Harbert Int'l Inc., supra.
By its first assignment of error, LWCC correctly argues that the WCJ misinterpreted the parties' joint stipulation. The *478 parties only stipulated that if Nunn were called to testify, he would state that he had no problems with his arms or hands prior to the 1997 accident. LWCC did not agree this was in fact true. Nevertheless, the stipulation and the deposition testimony of Dr. Knight support the finding that the problems with Nunn's right hand began at the time of or shortly after the accident; notably, there was nothing in the record to refute this. Nunn was able to work only about two more weeks after the accident, and Dr. Knight stated that pain from the neuropathy would cause him to "guard" or underuse his right arm during that period. Dr. Knight also explained that the neuropathy can cause this kind of atrophy and muscle loss over a period of several months, not more than a year as Dr. Genoff indicated. Notably, even Dr. Genoff admitted that the presentation of atrophy in the clinical setting is highly variable, although he felt Nunn's case was further progressed than would be expected between May and November.
Dr. Knight propounded a reasonable explanation why the symptoms of neuropathy would not have become severe until several months after the accident: "The most common problem with an ulnar nerve is it's tardy because of its late effects. It gradually comes on following a precipitating event." Dep., 24. He candidly admitted it was "hard to answer" whether Nunn had an ulnar nerve problem before the symptoms appeared, since the problem may be asymptomatic. Both Dr. Bell and Dr. Knight recorded a history of some numbness and tingling starting shortly after the accident.
In view of this evidence, the WCJ was not plainly wrong in concluding that Nunn proved that his work-related accident either caused or seriously aggravated his ulnar neuropathy. Bruno v. Harbert Int'l Inc., supra. This portion of the judgment is affirmed.

Penalties and attorney fees
By its final assignment, LWCC urges that the WCJ committed manifest error in assessing penalties and attorney fees. It argues that the WCJ applied the wrong standardarbitrary, capricious, and without probable causeto the case, while the employer was only required to "reasonably controvert" the claim in order to avoid penalties and fees.
This argument has merit. Since 1995, amendments to La. R.S. 23:1201 and 23:1201.2 have assigned the standard of "arbitrary and capricious" to cases where the employer or insurer discontinues the payment of benefits. Brown v. Texas-LA Cartage, 98-1063 (La.12/1/98), 721 So.2d 885; Williams v. Rush Masonry Inc., 98-2271 (La.6/29/99), 737 So.2d 41; Balsamo v. Jones, 28,885 (La.App. 2 Cir. 12/11/96), 685 So.2d 1140, fn. 3. Thus it does not apply to the instant case. The applicable statute, La. R.S. 23:1201 F, provides in pertinent part:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner: * * *
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
A claim is reasonably controverted when the employer or insurer produces factual or medical information of such a nature that it reasonably counters the claimant's evidence. Balsamo v. Jones, *479 supra, and citations therein. Penalties are stricti juris and should be imposed only when the facts clearly negate good faith and just cause in connection with the refusal to pay. Nowlin v. Breck Const. Co., 30,622 (La.App. 2 Cir. 6/24/98), 715 So.2d 112, and citations therein. Statutes authorizing penalties and attorney fees are not intended to compensate a compensation claimant and thereby make him whole, but rather are intended to discourage certain behaviors such as indifference to an injured employee. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382.
This record clearly shows that LWCC refused to authorize the recommended ulnar decompression surgery only after receiving the report from Dr. Genoff. His report cited the factors outlined above and asserted that Nunn's neuropathy was unrelated to his employment with CBC or to the May 1, 1997 accident. There is no showing that this doctor's findings were unsupported by medical examination, medically incorrect or fraudulently obtained. They were merely less persuasive than Dr. Knight's. On this record, Dr. Genoff's findings reasonably controverted the claim, and there is no basis for the award of penalties and attorney fees. That portion of the judgment is reversed.

Conclusion
For the reasons expressed, the award of necessary medicals and associated expenses is affirmed. However, the award of penalties and attorney fees is reversed. Costs are assessed 70% to CBC Services Inc. and LWCC, and 30% to Monroe J. Nunn.
AFFIRMED IN PART, REVERSED IN PART.
BROWN, J., concurs in part and dissents in part with written reasons.
BROWN, J., concurring in part and dissenting in part,
I agree with every judge that has heard this case"that Nunn proved that his work-related accident either caused or seriously aggravated his ulnar neuropathy."
I disagree that Nunn should have to pay his legal fees to obtain surgery for which he was clearly entitled. The WCJ acted within her wide discretion in awarding attorney fees.
Nunn was in need of surgery. Time was of importance and delay only worsened Nunn's condition. In this instance, defendants possessed no information that Nunn ever suffered numbness, tingling or pain prior to the incident or before his employment at CBC. The opinion of Dr. Genoff that the condition had been developing for more than a year failed to address whether the work or trauma activated, precipitated, aggravated or accelerated the neuropathic condition. That opinion did not reasonably counter the factual and medical information provided by Nunn.