760 So.2d 564 (2000)
Foster J. DURHAM, Plaintiff-Appellee,
v.
PLUM CREEK MANUFACTURING, Defendant-Appellant.
No. 32,888-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 2000.
*566 Gary D. Nunn, Jonesboro, Counsel for Appellant.
Williams & Williams by Joe Payne Williams, Shreveport, Counsel for Appellee.
Before WILLIAMS, STEWART, GASKINS, PEATROSS and KOSTELKA JJ.
GASKINS, Judge.
The defendant, Plum Creek Manufacturing, appeals a decision by the Office of Worker's Compensation, finding that the plaintiff, Foster J. Durham, is entitled to workers' compensation benefits. The plaintiff answered the appeal, urging that the workers' compensation judge erred in failing to award penalties and attorney fees. For the following reasons, we affirm.

FACTS
Mr. Durham was a forklift operator and worked at the defendant plywood mill for 22 years prior to the present injury alleged. The mill is now owned by Plum Creek, but had previously been operated by several other owners. In 1993, the plaintiff claimed that he injured his back when the seat on his forklift came off. He saw Dr. John P. Sandifer, complaining of pain in his lower back, accompanied by left hip pain and numbness in his left leg. A CT scan revealed a possible herniated disc at the L5-S1 level. Dr. Sandifer opined that Mr. Durham would probably end up needing surgery to alleviate the problem. However, the plaintiffs back improved and he resumed his duties at the mill. Mr. Durham did not seek any additional medical treatment for his back until the present injury.
As part of the plaintiff's job duties, he was required to move stacks of plywood by forklift from one point to another in the mill. He claims that on April 23, 1998, many of the sheets in the stacks were not lined up and he had to bump them with the forklift to correct the problem. While doing this, he claims that he felt something pop in his back and began experiencing pain in his lower back, leg, and hip, which intensified over time. According to the plaintiff, he reported this incident to Edward Wright, the lead man on his shift. *567 The next day, he contends he reported the injury to Jimmy Atwell, his supervisor. Mr. Durham continued to work for several days after this occurrence. On May 1, 1998, he consulted Dr. Sandifer. The doctor noted that the plaintiffs complaints were similar to those made in 1993. Dr. Sandifer noted that the possible herniated disc at the L5-S1 level was still present and the plaintiff was referred to Dr. Carl Goodman who performed surgery on the plaintiffs back.
When the plaintiff sought to obtain workers' compensation benefits, officials at Plum Creek denied his claim, contending that the plaintiff failed to timely report a work-related accident. Further, Mr. Durham was informed that if he claimed that the injury was work-related, he would not be able to draw accident and sickness benefits under an insurance plan carried with the mill. At the suggestion of Plum Creek management, Mr. Durham completed the insurance form showing that the cause of the injury was "under investigation." He drew the insurance benefits totaling $3,417.94 from May 1, 1998 to November 7, 1998. Mr. Durham then filed suit to obtain workers' compensation benefits. He sought to recover temporary total disability payments in the amount of $350.00 per week, medical and travel related expenses, and penalties in the amount of $2,000.00, together with attorney fees. Plum Creek disputed the plaintiffs entitlement to workers' compensation benefits.
This matter was tried on February 18, 1999.[1] The parties stipulated that the plaintiff would be entitled to recover the maximum amount of temporary total disability benefits if found that he is entitled to them, that recovery would be set from April 23, 1998, the date of the injury, and that the plaintiff received disability payments through the company accident and sickness insurance plan from May 1, 1998 through November 7, 1998.
The workers' compensation judge (WCJ) filed a judgment on March 25, 1999, awarding Mr. Durham temporary total disability (TTD) benefits in the amount of $350.00 per week from May 1, 1998 to November 1, 1998, and supplemental earnings benefits (SEBs) at the full compensation rate from November 2, 1998 through the date of judgment and during the disability, subject to modification in the event of the term of the disability or statutory limitations. Plum Creek was given credit for all sums paid to the plaintiff as accident and sickness benefits, $3,417.94. The plaintiffs claim for penalties and attorney fees against Plum Creek was denied. Plum Creek appealed the judgment, asserting that the plaintiff is not entitled to workers' compensation benefits. The plaintiff answered the appeal, claiming that the WCJ erred in failing to award penalties and attorney fees.

ACCIDENT
Plum Creek argues that the WCJ erred in finding that the plaintiff sustained a work-related accident and resulting injury entitling him to workers' compensation benefits. According to Plum Creek, the plaintiff had a preexisting back condition which deteriorated over time. Plum Creek notes that the plaintiff had a back problem in 1993 with identical symptoms to his present complaint, and was at that time diagnosed with the herniated disc for which he eventually had surgery in 1998. Plum Creek claims that the plaintiffs complaint of an on-the-job injury on April 23, 1998 was inconsistent with his action in working a large amount of overtime in the week following the date upon which he claimed he was injured. Plum Creek contended that the plaintiff knew that his portion of the mill was going to be shut down and that he would be laid off. Therefore, he decided to complain that he was injured. Plum Creek also argues that *568 the plaintiff did not timely inform his supervisors, Eddie Wright and Jimmy Atwell, of a work-related accident. Based upon our review of the record, we find that the plaintiff carried his burden of proving a work-related accident and resulting injury.
Workers' compensation benefits are available for claimants who suffer personal injury by accident arising out of and in the course of employment. La. R.S. 23:1031(A). An employment-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1).
The claimant's burden of proof in establishing a causal relationship between a job-related accident and the disability is by a preponderance of the evidence. Quinones v. U.S. Fidelity and Guaranty Company, 93-1648 (La.1/14/94), 630 So.2d 1303; Poland v. Kroger, # 404, 32,576 (La. App.2d Cir.12/8/99), 747 So.2d 711. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Taylor v. Columbian Chemicals, 32,411 (La.App. 2d Cir.10/27/99), 744 So.2d 704; Harris v. Coushatta Industrial Sand, Inc., 31,977 (La.App.2d Cir.6/16/99), 741 So.2d 143.
For the employee to recover, he must show that his employment somehow caused or contributed to the disability, but he need not establish the exact cause. Taylor v. Columbian Chemicals, supra. The causal relationship, however, can be established when the employee proves that before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appeared, and there is sufficient medical evidence to show a reasonable possibility of causal connection between the accident and the disabling condition. Further, an employee's pre-existing condition does not disqualify his claim if the work-related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. Poland v. Kroger, # 404, supra; Harris v. Coushatta Industrial Sand, Inc., supra; Jackson v. Creger Automotive Company, Inc., 29,249 (La.App.2d Cir.4/2/97), 691 So.2d 824, writ denied, 97-1436 (La.9/26/97), 701 So.2d 984. Correlatively, when an employee proves that before the accident, he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability. Qualls v. Stone Container Corporation, 29,794 (La.App.2d Cir.9/24/97), 699 So.2d 1137, writ denied, 97-2929 (La.App.2/6/98), 709 So.2d 736.
Whether a claimant has carried his burden of proof and whether the testimony is credible are questions of fact to be determined by the WCJ. Harris v. Coushatta Industrial Sand, Inc., supra. The WCJ's findings are subject to the manifest error rule. Only when documents or objective evidence so contradict the witness's story, or that story is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it, may the appellate court find manifest error. Taylor v. Columbian Chemicals, supra. Where there are two permissible views of evidence, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993).
At trial, the plaintiff acknowledged that in 1993 he injured his back at work when *569 the seat of his forklift came off. He saw Dr. Sandifer for treatment of pain in his back, leg and hip and was diagnosed with a herniated disc. His symptoms improved sufficiently that he was able to return to work. Although in the five years since that accident the plaintiff experienced some back pain, he did not seek medical treatment.
Several weeks before the present accident, the plaintiff requested a back brace from Plum Creek to wear at work. However, on the evening of April 23, 1998, he stated that he felt his back pop while straightening loads with the forklift. His leg and back immediately became painful. He claimed that he told his lead man, Edward Wright, that straightening the loads made his back hurt. He claimed that the next day, he reported the accident to his supervisor, Jimmy Atwell, but that Atwell walked away from him. He worked for several days after the injury, but his back became progressively worse. On the last night he worked, the plaintiff stated that another forklift operator, Charles Smith, had to help him to his truck. The plaintiff went to Dr. Sandifer on May 1, 1998 and then went the emergency room of the Winn Parish Medical Center on May 6, 1998, because his back medication was affecting his heart.
The plaintiff's wife, Annette Durham, testified that on April 23, 1998, the plaintiff came home from work and stated that his back was hurting. She stated that up until the plaintiffs present claim of injury, she had not heard him complain of back pain. However, after his claimed injury on April 23, 1998, he walked like he was in pain.
Charles R. Smith was also a forklift operator in the same area where the plaintiff worked. He testified that on the last day the plaintiff worked, he said his back was hurting. However, the plaintiff did not tell Smith he had an accident. He said that he had to help the plaintiff to his truck on the last night he worked.
Margie Turner worked at Plum Creek in the same area as Mr. Durham. In her deposition, she stated that before April 1998, the plaintiff did not complain of back problems and was able to get on and off his forklift without difficulty. In April 1998, she observed that the plaintiff appeared to be in pain while walking. After that time, he also appeared to have difficulty getting on and off the forklift. She stated that the plaintiff did not return to work at Plum Creek after he sought medical treatment.
Sheila Martin stated in her deposition that she worked in the same area as the plaintiff and observed him to be in pain. He told her that he injured his back at work, but she did not know what day the alleged injury occurred. The plaintiff told her that he had informed his supervisor, Jimmy Atwell, of the accident but that he had not been released from work to seek medical attention. She stated that she had not noticed the plaintiff having back problems before that time. According to Ms. Martin, the plaintiff worked three or four days from the time she noticed him experiencing discomfort before he went to the doctor.
Irma Lewis also worked in the same area of the mill as the plaintiff. She noticed him experiencing difficulty getting on and off the forklift. She did not remember how the plaintiff hurt his back, but did notice him in pain shortly before he stopped working.
On May 1, 1998, the plaintiff went to Dr. John P. Sandifer, the orthopedic surgeon who had previously treated him for a back injury. The plaintiff reported that a week to ten days earlier, he began having a lot of trouble with his left lower back. X-rays of the plaintiffs back showed that he had a marked decrease in the disc space at the L5-S1 level. The complaints and findings were similar to those in 1993. A May 19, 1998 MRI showed that the plaintiff had a ruptured disc at this level. The MRI showed a possible extruded fragment, meaning that the disc material was displaced.
*570 Dr. Sandifer thought the plaintiff's back problems in 1993 were work-related. Regarding whether the present injury was caused by an accident at work, Dr. Sandifer said, "I think the key thing now or [sic] whether this is work related in '98 would be what his interim work history was you know. Did he have a lot of medical treatment for back problems, hip and leg pain?... I think the interim work history is going to be the most important thing as far as trying to determine that." Dr. Sandifer noted that when he saw the plaintiff in 1998, Mr. Durham did not report extensive back pain in the five years since his last visit. Dr. Sandifer also commented that, in order for the plaintiff to have returned to work on his forklift after the 1993 injury, he would have had to have had a significant improvement in his condition.
The plaintiff was referred to Dr. Carl Goodman for surgery on his back. Dr. Goodman stated that the plaintiff reported a prior back injury in 1993 and that he had recently jarred his back while working. Dr. Goodman performed surgery on the plaintiff's ruptured disc on June 9, 1998. Dr. Goodman found that the plaintiffs condition appeared to be long standing. The plaintiff developed a disc space infection following surgery. Dr. Goodman stated that this can sometimes take one year to heal and the plaintiff would not be able to work until the infection was resolved. Dr. Goodman stated that the plaintiffs condition was more probably than not caused by jarring his spine on the forklift, as Mr. Durham described.
The record shows that the plaintiff suffered a herniated disc in 1993 while operating a forklift at Plum Creek. The plaintiff was treated by Dr. Sandifer and his symptoms improved sufficiently for the plaintiff to return to work. While the plaintiff admits he had some back pain from 1993 until the time of this accident, the record does not establish that this was significant enough for the plaintiff to seek medical attention until the present injury in 1998. The WCJ found credible the plaintiffs testimony that he felt a pop in his back on April 23, 1998 while operating his forklift at Plum Creek, accompanied by the sudden onset of pain in his lower back, left hip and left leg. This is sufficient to show that the plaintiff suffered an employment-related accident. Further, even though none of the plaintiff, co-workers actually saw the accident occur, several testified that the plaintiff suddenly began experiencing severe, debilitating back pain at the time he claims he was injured, corroborating his testimony. These facts establish that a sudden, precipitous event occurred while the plaintiff was operating his forklift which aggravated his previous work-related back injury. Further, this was more than a gradual deterioration. Also, the plaintiff attempted to report his condition to his supervisors, but was not successful in doing so, as will be discussed below. Under these facts, we find that the plaintiff established that he sustained a work-related injury which aggravated or combined with his prior work-related back injury to produce the present disability. Therefore, the WCJ was not manifestly erroneous or clearly wrong in awarding workers' compensation benefits to the plaintiff.

PENALTIES AND ATTORNEY FEES
The plaintiff answered the appeal, contending that the WCJ erred in rejecting his claim for penalties and attorney fees. The plaintiff notes that Plum Creek failed to call to testify the person who made the decision to reject his claim for benefits. Further, he asserts that there was no evidence to controvert his claim. Therefore, Plum Creek was arbitrary and capricious in denying benefits and should be assessed with penalties and attorney fees. He seeks a 12% penalty on all amounts past due. Mr. Durham further asserts that his attorney expended considerable time in this case, attending twelve depositions. Two depositions were of experts. He argues that an attorney fee of *571 $7,500.00 should be awarded in this case. This argument is without merit.
A claimant is entitled to recover penalties and attorney fees in instances where the employer fails to timely pay medical or indemnity benefits unless the claim is reasonably controverted. La. R.S. 23:1201. A claim is reasonably controverted when the employer or insurer produces factual or medical information of such a nature that it reasonably counters the claimant's evidence. Taylor v. Columbian Chemicals, supra. A WCJ has great discretion in awarding or denying penalties and attorney fees and his or her discretion will not be disturbed absent manifest error. Odom v. International Paper Co., 31,826 (La.App.2d Cir.5/5/99), 736 So.2d 290.
The attorney fee and penalty provision, however, are penal in nature and must be strictly construed, allowing recovery only in cases where the facts negate probable cause of nonpayment. Briscoe v. Thero-Kinetics, Inc., 31,890 (La.App.2d Cir.5/5/99), 737 So.2d 177; Lee v. Bancroft Bag, Inc., 30,820 (La.App.2d Cir.8/19/98), 717 So.2d 1230.
The record shows that the plaintiff's claim for workers' compensation benefits was reasonably controverted. The plaintiff claimed that he told Edward Wright, the lead man on the plaintiffs shift, that his back was hurting from straightening loads with the forklift. However, it does not appear that Wright understood that the plaintiffs back suddenly popped and started hurting while he was operating the forklift. Wright denied that the plaintiff informed him that he had a work-related accident in April 1998. According to Wright, on April 23, the plaintiff was walking slowly and told him that his back was hurting. Wright did not ask the plaintiff why his back hurt. He stated that he was not aware that the plaintiff claimed a work-related accident until much later when he was so informed by the plaintiffs supervisor, Jimmy Atwell.
According to Jimmy Atwell, the plaintiff was a good worker who had no prior workers' compensation claims. Atwell said that the plaintiff never told him that his back was hurting, but rather reported that he had a doctor's appointment. Atwell knew that the plaintiff had a heart condition and assumed that the plaintiff was seeking medical attention for that reason.
Paul Williams, the sawmill superintendent at Plum Creek, stated in his deposition that he knew the plaintiff had a heart condition and once was treated for smoke inhalation after a fire at the mill. However, he was not aware that the plaintiff had a back problem. According to Williams, the mill's first notification that the plaintiff claimed a work-related back injury was on May 6, 1998, when they received a call from the emergency room of the Winn Parish Medical Center, where the plaintiff had gone, complaining of back pain from an accident at work. According to Williams, on May 18, 1998, he had a meeting with the plaintiff and Judia Hobdy, the human resources coordinator at the mill. In that meeting, the plaintiff stated that he injured his back while operating his forklift. He also stated that he had a disc injury from 1993 that had flared up again.
Judia Hobdy, the human resources coordinator at Plum Creek, stated in her deposition that company policy required that the supervisor complete an accident report as soon as an accident is reported. A workers' compensation adjuster in Arkansas is then given the form within 48 hours. In this case, the supervisors did not complete an accident report because they claimed to be unaware that the plaintiff had suffered an accident and a work-related injury. Hobdy stated that the mill management knew on May 6, 1998 that the plaintiff claimed to have had a work-related accident. However, because they took the position that the accident was not reported according to set procedures, the plaintiffs workers' compensation claim was denied. The mill also took the position *572 that the plaintiff was merely having difficulties with an old back problem.
The record shows that the plaintiff told Edward Wright and Jimmy Atwell that his back was hurting from straightening stacks of wood with his forklift. However, it appears that he did not clearly communicate at that time that he was claiming a work-related accident. Further, some statements made by the plaintiff during his meetings with the mill management indicated that he was having a recurrence of a longstanding back problem, rather than suffering from an accident as statutorily defined. Under these facts, we find that the WCJ did not abuse her discretion in finding that the plaintiff's claim was reasonably controverted and accordingly, denying the plaintiff's claim for penalties and attorney fees.

CONCLUSION
We affirm in all respects the judgment of the workers' compensation judge, awarding temporary total disability benefits and supplemental earnings benefits to the plaintiff, Foster J. Durham, and denying the plaintiff's claim for penalties and attorney fees against the defendant, Plum Creek Manufacturing.
AFFIRMED.
STEWART, J., concurs in part and dissents in part.
WILLIAMS, J., concurs in part and dissents in part for reasons assigned by STEWART, J.
STEWART, J., concurring in part and dissenting in part.
Although I agree with the majority's opinion to affirm the award of workers' compensation benefits, I dissent from the majority's failure to reverse the Workers' Compensation Judge's ("WCJ") failure to award penalties and attorney fees.
La. R.S. 23:1201 F provides that penalties and attorney fees are recoverable if the employer or insurer fails to commence payment of benefits timely, unless the claim is reasonably controverted. Mr. Durham hurt his back on April 23, 1998 while performing his regular duties as a forklift driver. The majority found that he told his supervisors, Edward Wright and Jimmy Atwell, that his back was hurting from straightening stacks of wood with his forklift. These supervisors failed to properly communicate or document his injury. Regardless, on May 6, 1998, the company received a call from the emergency room of the Winn Parish Medical Center informing the company that Mr. Durham was complaining of back pain from an accident at work. On May 18, 1998, Mr. Durham met with Judia Hobdy, the Human Resource Manager, and Paul Williams, the Plant Manager, at which time Mr. Williams acknowledged that Mr. Durham gave a written statement blaming his current back problems on an on-the-job injury. Ms. Hobdy, who had denied the original compensation claim, requested that Mr. Durham file for accident and sickness benefits. Mr. Durham turned in his claim form but still claimed he had been injured on the job. Ms. Hobdy required him to submit a different form stating it was not an on-the-job injury.
Although the company later claimed Mr. Durham's claim was under investigation, no evidence was presented as to what type of investigation occurred. Neither the testimony of the person who ultimately denied the claim nor the results of any investigation was presented into evidence. No worker's compensation benefits were ever paid.
Awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Sharbono v. Steve Lang and Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382. The company based the initial denial of benefits on the misconception that there was no immediate report of the accident by the plaintiff; however, even if true, that fact *573 does not justify the denial of benefits. The employer must adequately investigate the claim, and the crucial inquiry is whether the employer had an articulable and objective reason for denying or discontinuing benefits at the time he took the action. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41.
The company claims that Mr. Durham decided he was injured because he knew that his portion of the mill was going to be shut down and that he would be laid off. This is not an objective reason for the initial and subsequent denial of benefits to Mr. Durham. Based on this record, the findings of the WCJ concerning penalties and attorney fees should be reversed.
NOTES
[1] The trial was held in Natchitoches, Louisiana. However, the plaintiff specified that the injury occurred in Winn Parish and that he is a resident of that parish. Therefore, he elected this court as the venue for his appeal.