801 So.2d 524 (2001)
Bobby L. NOLAN, Plaintiff-Appellee,
v.
RAWLS FARMING COMPANY, Defendant-Appellant.
No. 35,086-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2001.
Rehearing Denied November 29, 2001.
*527 Cotton, Bolton, Hoychick, & Doughty by Barry W. Dowd, Monroe, Counsel for Appellant.
Theodore J. Coenen, IV, Rayville, Counsel for Appellee.
Before BROWN, CARAWAY and KOSTELKA, JJ.
BROWN, J.
Both the claimant, Bobby Nolan, and his employer, Rawls Farming Company, have appealed from the WCJ's judgment finding that Nolan sustained an injury during the course and scope of his employment as a farmhand with Rawls Farming and awarding him temporary total disability ("TTD") benefits for a ten month period at a rate of $286.29 per week, as well as medical expenses for the same period. The WCJ also ordered Rawls Farming to pay Nolan $2,000 in penalties and $7,000 in attorney fees. Finally, the WCJ found that Nolan lied about moving some furniture during his testimony at trial and decreed that by virtue of the same, he had forfeited his right to all future indemnity and medical benefits. For the reasons set forth below, we affirm in part, reverse that part of the judgment denying future benefits and remand the matter to the WCJ for further proceedings consistent with this opinion.

Facts and Procedural Background
On or about August 2, 1999, claimant, Bobby Nolan, a 58-year-old farmhand, injured his back in a work-related accident. Nolan's employer, Joel Rawls, was present at the time of the incident. On that date, Rawls assisted Nolan in lifting the tongue of a trailer holding a pump motor. Rawls then left Nolan holding the trailer up while he backed his truck closer so that the trailer could be attached. Immediately thereafter, Nolan advised Rawls that he felt a pop in his back while lifting the trailer tongue. Nolan continued to work that day and several days following the accident, but voiced complaints to his employer and co-workers about pain in his back. Nolan testified that he requested medical attention from Rawls, but that his request was denied. He then told his employer that he was going to see a doctor.
Nolan sought medical treatment at the E.A. Conway Medical Center. Nolan reported that as he bent over to pick something up, he felt his back pop and that it "sounded like a stick broke." Nolan received follow-up care at E.A. Conway. An MRI revealed an annular bulge at L5/S1 and Nolan was diagnosed with a herniated disc at that level.
Dr. Douglas Liles examined Nolan on November 23, 1999. Nolan related that he injured his back while lifting a trailer tongue and that he had back pain as well as pain radiating down into his right leg. X-rays revealed a chronic spondylolisthesis of L5/S1 as well as the ruptured disc at that level. In his deposition, Dr. Liles noted that the disc at the L4/5 level had actually herniated up into the body of the vertebra. While finding a pre-existing condition in Nolan's back, Dr. Liles nonetheless opined that the herniation and resulting disability were caused by the work-related accident. Dr. Liles also opined *528 that Nolan was unable to return to work as a farm laborer, but could perform light duty work after conservative treatment.
Dr. Liles recommended conservative treatment and, alternatively, a decompression laminectomy of L5. Dr. Liles referred Nolan to the neurosurgery department at LSUMC. As noted above, Dr. Liles authorized Nolan to return to light duty work following conservative treatment.[1] Nolan attempted to return to work on April 17, 2000, but he testified that because of pain, he did not return after that date. We note, however, that the job duties that Nolan was assigned that day were not on the list that defendant presented to Dr. Liles for approval. According to Nolan, he is no longer able to perform even light duty assignments for his former employer.
Rawls Farming, whose workers' compensation coverage lapsed several months prior to Nolan's accident, refused to pay either medical or indemnity benefits. Nolan filed a disputed claim form and the matter was tried by the WCJ on June 19, 2000. Judgment was rendered on August 10, 2000, and signed on September 13, 2000. Nolan was awarded TTD benefits in the amount of $286.29 per week from August 2, 1999, through June 19, 2000, the date of trial.[2] Rawls Farming was also ordered to pay all medical expenses incurred prior to June 19, 2000. Finding that Rawls Farming's conduct in refusing to pay benefits was arbitrary and capricious, the WCJ imposed a penalty of $2,000 and awarded Nolan attorney fees in the amount of $7,000. Finally, finding that Nolan committed fraud during his testimony at trial, the WCJ ordered forfeit from the date of trial any future medical or indemnity benefits. See La.R.S. 23:1208. It is from this judgment that both parties have appealed.

Discussion

Standard of Review
Factual findings in workers' compensation cases are subject to the manifest error/clearly wrong standard of review. Alexander v. Pellerin Marble & Granite, 93-1698 (La.01/14/94), 630 So.2d 706; Corley v. Wal-Mart Stores, Inc., 31,917 (La.App. 2d Cir.05/07/99), 737 So.2d 204, writ denied, 99-2002 (La.10/15/99), 748 So.2d 1151. In applying this standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993); Corley, supra. If the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551, Stobart, supra.

Entitlement to Benefits
Rawls Farming contends that the WCJ erred in finding that Nolan was entitled to *529 workers' compensation benefits. According to defendant, the evidence clearly showed that Nolan's post-accident condition was not significantly different than his pre-accident condition.
An employer is liable for compensation benefits and necessary medical expenses to any employee who receives personal injury due to an accident arising out of and in the course of his employment. La.R.S. 23:1031; Nunn v. CBC Services, Inc., 32,491 (La.App. 2d Cir.01/26/00), 750 So.2d 474. An employment-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La.R.S. 23:1021(1); Poland v. Kroger, # 404, 32,576 (La.App. 2d Cir.12/08/99), 747 So.2d 711, writ denied, 00-0583 (La.04/07/00), 759 So.2d 764.
A worker's pre-existing condition does not bar his recovery under Louisiana Workers' Compensation law. Guillory v. U.S. Fidelity & Guaranty Insurance Co., 420 So.2d 119 (La.1982); Harvey v. BE & K Construction, 30,825 (La.App. 2d Cir.08/19/98), 716 So.2d 514. A claimant's burden of proof in establishing a causal relationship between a job-related accident and a disability is by a preponderance of the evidence. Durham v. Plum Creek Manufacturing, 32,888 (La.App. 2d Cir.05/10/00), 760 So.2d 564; Poland, supra; Quinones v. U.S. Fidelity & Guaranty Co., 93-1648 (La.01/14/94), 630 So.2d 1303.
In determining whether the worker has discharged the burden of proof, the trier of fact should accept as true a witness's uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of his testimony. A worker's testimony alone may be sufficient to discharge the burden of proof provided that two essential elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the incident. Jackson v. Creger Automotive Co., Inc., 29,249 (La.App. 2d Cir.04/02/97), 691 So.2d 824, writ denied, 97-1436 (La.09/26/97), 701 So.2d 984. A claimant's own uncontradicted testimony corroborated by medical evidence may prove a work-related accident. Id.; Shelton v. Wall, 614 So.2d 828 (La.App. 2d Cir.1993).
For the employee to recover, he must show that his employment somehow caused or contributed to the disability, but he need not establish the exact cause. Nunn, supra; Quinones, supra. The causal relationship, however, can be established when the employee proves that before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appeared, and there is sufficient medical evidence to show a reasonable possibility of causal connection between the accident and the disabling condition. Durham, supra; Poland, supra. Further, an employee's pre-existing condition does not disqualify his claim if the work-related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. Id.; Jackson, supra. Correlatively, when an employee proves that before the accident, he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident *530 and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with this pre-existing disease or infirmity to produce his disability. Durham, supra; Qualls v. Stone Container Corp., 29,794 (La.App. 2d Cir.09/24/97), 699 So.2d 1137, writ denied, 97-2929 (La.02/06/98), 709 So.2d 736.
An employee is entitled to TTD benefits if he sustains a work-related injury "producing temporary total disability ... to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training or experience[.]" La. R.S. 23:1221(1)(a). When such an employee is not working, TTD compensation is proper "only if the employee proves by clear and convincing evidence, unaided by any presumption of disability," that he is physically unable to engage in any employment or self-employment, "including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain[.]" La. R.S. 23:1221(1)(c); Fisher v. Lincoln Timber Co., 31,430 (La.App.2d Cir.01/24/99), 730 So.2d 973.
Whether a claimant has carried his burden of proof and whether his testimony is credible are questions of fact to be determined by the WCJ. Durham, supra; Harris v. Coushatta Industrial Sand, Inc., 31,977 (La.App. 2d Cir.06/16/99), 741 So.2d 143.
During his testimony, Nolan was asked whether he had ever had back problems prior to the accident. Nolan's response was that his back would get stiff sometimes after a hard day at work, but that with Tylenol and rest, it was fine by the next day. Dr. Liles observed in his progress notes that Nolan reported no prior complaints of back pain, but that a lot of his problems after the accident were probably antecedent although asymptomatic until the event.
Nolan related to Dr. Liles that he had low back pain as well as severe radiating right leg pain. Nolan further expressed that this pain began immediately after his work-related accident. After reviewing the MRI as well as x-rays, Dr. Liles found that Nolan had a chronic spondylolisthesis of L5/S1 which was most likely present from birth. He further opined that the herniated disc at L4 was old as well. Dr. Liles pointed out, however, that there was no nerve impingement at L4; instead, all of Nolan's current complaints were related to nerve root impingement and a ruptured disc at L5/S1.
Dr. Liles noted Nolan's prior medical history, which involved serious heart and vascular problems, his age and the nature of his employment and, taken together with his back condition, found that it would take "some" months of conservative treatment before Nolan could be considered fit for even light duty. According to Dr. Liles:
I think the plain x-rays, the MRI and physical findings all show he has a real problem, and whether it can be treated conservatively, I don't know. Certainly, you'd give it a chance. You'd give it some months because, no matter what you do, you're not going to send him back to being a laborer. I don't care if you get a golden operation. You're not going to send him back to being a laborer; not a 60-year-old with a back that looks like that. The only thing you want to do is get him out of his trouble, and he'd be fit for light duty.
*531 When asked whether most of Nolan's problems pre-existed the accident, Dr. Liles responded:
He had a lot of structural abnormalities of the lumbar spine. Now, could he have had an acute event that brought him in with leg pain? Yes, he could have. Could he have been working doing labor? Yeah. We see people all the time with this kind of thing doing hard, manual labor their whole life and they've never hadhave taken a few Doan's pills or whatever. So I'm not trying to be double-talking. If he herniated that disc at that time, which he very well may have, then that would be the event that set him over and made him symptomatic for what he is now. It would be hard for me to believe that he hadn't had some degree of back discomfort and leg discomfort over the years with those x-rays....
[H]e seemed like a pretty reliable guy. He wasn't very histrionic, didn't jump all over the place and put on. I think he has a problem, he hurts, and in his mind it happened then.
When defense counsel tried to get Dr. Liles to state with any degree of probability whether Nolan's condition was caused by the accident, he responded:
The only thing I could tell youI can just go back and sayhe seemed reliable. He sat there and didn't put on or act up, and seemed like he had worked hard all his life, and wasn't out to manipulate the system in any way, you know. I mean, you kind of get used to seeing that after a while.... That wasn't my impression of him....
I mean, you have somebody with a solid work history of 30 years, has been a good employee; you know, that's all he's done. And he comes in and gives it straightforward to you and he's not bugging people for pain medication, he just wants to get better; it's kind of hard not to believe somebody like that.
As noted above, it was Dr. Liles' recommendation that Nolan try conservative treatment first and if that proved unsuccessful, then possibly a decompression laminectomy of L5. Furthermore, although Dr. Liles signed a release for Nolan to return to light duty in March 2000, the record does not indicate that conservative treatment had yet been sought. The testimony also shows that, notwithstanding the list of specific tasks presented by defendant to Dr. Liles for approval, on the date he attempted to return to work, April 17, 2000, Nolan was assigned duties that were not on the list presented by defendant to Dr. Liles.
The testimony of both Nolan and his employer supports the finding that a sudden, precipitous event happened while Nolan was holding up the trailer tongue. Nolan's testimony, together with the medical records and testimony of Dr. Liles, are sufficient evidence from which the WCJ could have concluded that Nolan's back injury was made symptomatic, aggravated or caused by the August 2, 1999, accident. There is no manifest error in the WCJ's award of indemnity and medical benefits to Nolan.
As for the termination of TTD benefits, they "shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued regular treatment by a physician is not required." La.R.S. 23:1221(1)(d); Fisher, supra.
In light of our determination that Nolan did not commit fraud during his testimony, see discussion infra, he is entitled to continued TTD benefits during the *532 time that he receives the conservative treatment recommended by Dr. Liles and until it is determined by the WCJ that he is no longer eligible for such benefits. See Miller v. Byles Welding & Tractor Co., 96-164 (La.App. 3d Cir.06/05/96), 676 So.2d 665.
Prior to addressing the issue of fraud, the WCJ noted in her oral reasons for judgment Nolan's unsuccessful attempt to return to work with defendant following the release executed by Dr. Liles. She then found that, should Dr. Liles still feel that Nolan was able to perform light duty work, then Nolan was entitled to the assistance of a vocational rehabilitation counselor in locating light duty work. We therefore pretermit any discussion as to the duration of TTD benefits and/or whether Nolan may be entitled to another type of benefit, such as supplemental earnings benefits ("SEB"), inasmuch as that issue was not fully considered by the WCJ. See footnote 4, infra.

La.R.S. 23:1208 Fraud
Both parties take issue with the WCJ's ruling on the question of fraud. Rawls Farming contends that, once she found that Nolan committed fraud, the WCJ should have ordered that he was precluded from receiving all compensation and medical benefits, not just from the date of his false testimony. On the other hand, Nolan asserts that the WCJ erred in finding that he committed fraud.
La.R.S. 23:1208 provides in part:
(A) It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
(E) Any employee violating this Section shall, upon determination by the workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
* * *
Under La.R.S. 23:1208, the requirements for forfeiture of benefits are that: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefits or payment. Resweber v. Haroil Construction Co., 94-2708 (La.09/05/95), 660 So.2d 7. All of these requirements must be present before a claimant can be penalized. Harris v. Bancroft Bag, Inc., 30,431 (La. App.2d Cir.04/09/98), 714 So.2d 44. Because the statute is penal in nature, it must be strictly construed, both in its substantive ambit and in its penalty provisions. Chevalier v. L.H. Bossier, Inc., 95-2075 (La.07/02/96), 676 So.2d 1072; Smalley v. Integrity, Inc., 31,247 (La.App. 2d Cir.12/09/98), 722 So.2d 332, writ denied, 99-0072 (La.03/19/99), 739 So.2d 782.
The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. An inadvertent and inconsequential false statement will not result in the forfeiture of benefits. Rosson v. Rust Constructors, Inc., 32,789 (La.App. 2d Cir.03/01/00), 754 So.2d 324, writ denied, 00-0914 (La.05/26/00), 762 So.2d 1105; Bass v. Allen Cannery Company, Inc., 30,635 (La.App.2d Cir.06/26/98), 715 So.2d 142, writ denied, 98-2069 (La.11/06/98), 728 So.2d 395.
During questioning, Nolan was asked whether he had hunted or fished since his accident. Nolan's response was that he had not done any recreational hunting or fishing because of his inability to lift heavy items. Specifically, Nolan stated that he *533 had been in pain and unable to lift heavy things as a result of his work-related injury.
Defendant then presented the testimony of Ronald Johnston, a private investigator, who stated that for approximately 45-50 minutes on May 1, 2000, he observed Nolan and another man moving heavy furniture and appliances out of a house and into the back of a truck. Also introduced into evidence were photographs showing Nolan and another person (or persons) lifting these items. On cross examination, Johnston admitted that although he had heard rumors that Nolan had been hunting and fishing, this was the only time that he had observed Nolan lifting anything during the course of the investigation, which was conducted over a period of several months.
On rebuttal, Nolan acknowledged that he was the person in the photographs. However, he noted that the pictures did not show that he had three other people helping him move his things out of the house he had been renting and from which he had been evicted and given a day to remove his things. According to Nolan, he was evicted because he had been unable to pay his rent due to his employer's refusal to pay him weekly indemnity benefits.
In response to questions posed by the WCJ, Nolan testified that he was "not really" lifting the items by himself, but had help from the others. However, he did acknowledge that he was required to do some bending and lifting during the move.
As noted above, in order for the forfeiture provision to apply, all three elements set forth in La.R.S. 23:1208 must be met. As expressed by the supreme court in Resweber, supra, an inadvertent and inconsequential false statement does not result in the forfeiture of benefits. After reviewing the record in this case, we find that the WCJ was clearly wrong in finding that Nolan's answers at trial were willfully made or for the purpose of obtaining workers' compensation benefits. Clearly, extraordinary circumstances motivated Nolan's activities the day he was observed by the investigator, i.e., his eviction from his home for failure to pay the rent, which stemmed from his employer's failure to pay obviously due benefits.
We therefore reverse that portion of the WCJ's judgment ordering application of the forfeiture provisions of La.R.S. 23:1208.[3] This finding necessitates a remand to the WCJ for a determination of the duration of the award of TTD benefits and consideration of the propriety of an award of SEB.[4]

Penalties and Attorney Fees
Finally, Rawls Farming argues that the WCJ erred in awarding penalties and attorney fees to Nolan.
A claimant is entitled to recover penalties and attorney fees in instances where the employer fails to timely pay medical or indemnity benefits unless the *534 claim is reasonably controverted. La.R.S. 23:1201; Durham, supra. A claim is reasonably controverted when the employer or insurer produces factual or medical information of such a nature that it reasonably counters the claimant's evidence. Id.
An award of penalties and attorney fees is essentially penal in nature, being imposed to discourage indifference and undesirable conduct by an employer and/or insurer. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.07/01/97), 696 So.2d 1382; Nunn, supra; Ward v. Phoenix Operating Co., 31,656 (La.App. 2d Cir.02/24/99), 729 So.2d 109. An employer must adequately investigate the claim; the crucial inquiry is whether the employer had an articulable and objective reason for denying benefits at the time it took the action. Williams v. Rush Masonry, Inc., 98-2271 (La.06/29/99), 737 So.2d 41.
The WCJ has great discretion in awarding or denying penalties and attorney fees and her discretion will not be disturbed absent manifest error. Durham, supra; Odom v. International Paper Co., 31,826 (La.App. 2d Cir.05/05/99), 736 So.2d 290.
The following is taken from the WCJ's oral reasons for judgment:
I find this case to involve one of the most blatant acts of arbitrary and capricious conduct ever witnessed by this Court.... [I]t is clear to this Court that Joel Rawls knew of the claimant's injury. He was present at the time of the injury and even discussed the injury with the claimant. The only reason that he failed to provide workers' compensation benefits to this claimant is obvious to me. And that is, because he did not have workers' compensation insurance. His attempt to hide behind the variations used by the claimant to describe what was being lifted and his reliance on his photographs taken nine months after the incident cannot shield him from the imposition of a penalty and an award of attorney fees to the claimant's attorney.
Having reviewed the record in its entirety, we cannot say that the WCJ abused her discretion in awarding penalties and attorney fees in this matter.

Conclusion
For the reasons set forth above, that portion of the WCJ's ruling that forfeited Bobby Nolan's future indemnity and medical benefits from the date of trial, June 19, 2000, is hereby reversed and benefits are hereby ordered reinstated and are to be continued until such time as ineligibility is shown. The matter is remanded to the WCJ for a determination of the duration of TTD benefits and consideration of the propriety of an award of SEB. In all other respects the judgment is affirmed. Costs are assessed to defendant, Rawls Farming Company.
REVERSED IN PART; AFFIRMED IN PART; REMANDED.
APPLICATION FOR REHEARING
Before NORRIS, C.J., BROWN, CARAWAY, PEATROSS, and KOSTELKA, JJ.
Rehearing denied.
NOTES
[1] Defendant provided Dr. Liles with an exclusive list of proposed light duty tasks for which Nolan would be responsible. These tasks included: lifting of things ten pounds and under; occasional driving of an air conditioned tractor with air-ride seats on smooth terrain; and sweeping with a push broom. Defendant also indicated to Dr. Liles that Nolan would be given breaks at least every two hours and that he would not be required to do any job outside of these specifications. See Joint Exhibit 4.
[2] This amount, $286.29 per week, represents a 50% increase in Nolan's compensation rate due to his employer's failure to have workers' compensation insurance. See La.R.S. 23:1171.2.
[3] Our resolution of this issue obviates a discussion of defendant's contention regarding the WCJ's failure to apply the forfeiture provision retroactively so as to preclude Nolan from receiving any compensation benefits. Likewise, a discussion of Rawls Farming's argument regarding their entitlement to reimbursement from Nolan of medical benefits it has paid on his behalf is pretermitted.
[4] Inasmuch as the issue before the WCJ was whether Nolan was entitled to TTD benefits, SEB were never considered by the lower court. Therefore, on remand, the parties should be allowed to offer whatever evidence they deem appropriate to support or rebut the award of SEB. La.R.S. 23:1221(3)(c)(i); Smith v. Gaylord Container Corp., 01-0924 (La.06/29/01), 791 So.2d 629, reh'g denied, 01-0924 (La.09/14/01), 796 So.2d 670.