| .DENNIS R. BAGNERIS, SR., Judge.
This disputed Workers’ Compensation claim was filed after the employer discontinued benefits. The Workers’ Compensation Judge (“WCJ”) found in favor of the employer, Bridge Terminal Transport, and against the employee, John H. Alphonso. Specifically, the WCJ denied Mr. Alphonso’s benefits and found that Mr. Alphonso forfeited his rights to workers’ compensation benefits under La. R.S. 23:1208. For the reasons ascribed below, we affirm the WCJ’s finding that Mr. Alphonso failed to prove that he continued to be disabled as a result of his job-related injury; we reverse the WCJ’s finding that Mr. Alphonso forfeited his rights to workers’ compensation under La. R.S. 23:1208; and we remand the case for the WCJ to determine whether Mr. Alphonso is capable of returning to his pre-injury employment and whether he is entitled to rehabilitation services. In all other respects, the judgment is affirmed.
FACTS AND PROCEDURAL HISTORY
Mr. Alphonso was employed as a truck driver for Bridge Terminal Transport (“BTT”). On March 14, 2000, Mr. Alphonso allegedly sustained injuries to his back and neck when he was involved in an accident with another 18-wheeler.
IsBTT paid medical benefits and weekly wage benefits from March 2000, through August 8, 2000 at a weekly rate of $384.00. Benefits were reinstated on September 6, 2000, and continued through March 6, 2001. Mr. Alphonso’s benefits were terminated in March 2001 based on video surveillance, which purportedly illustrated that Mr. Alphonso was more active than what he was leading his doctors to believe. Mr. Alphonso filed this disputed claim on August 20, 2001.
On April 19, 2002, a trial was held at which only Plaintiff testified. The admissibility of all other evidence was stipulated to and submitted in either written or video form. Based on the testimony and evidence introduced, the WCJ found that: (1) Mr. Alphonso failed to prove that he continued to be disabled as a result of his March 14, 2000 job-related injury; (2) the tumor identified on Mr. Alphonso’s spine is not a result of his injury and neither does it, nor his injury of March 14, 2000, prevent him from engaging in employment; (3) BTT’s decision to terminate benefits in March 2001 was proper; and (4) Mr. Alphonso’s conduct, acts and representations violated La. R.S. 23:1208 and has forfeited his right to workers’ compensation benefits. On July 31, 2002, Mr. Alphonso filed a motion for a new trial, which was denied without a hearing. Mr. Alphonso now appeals this final judgment.
On appeal, Mr. Alphonso alleges four assignments of error. Specifically, he alleges the WCJ erred by: (i) finding that he was not physically disabled for his duties as the driver of an 18-wheeler; (ii) finding that he committed fraudulent statements in applying for his compensa *504 tion benefits; (Hi) failing to find that BTT was unreasonable, arbitrary and capricious for terminating his weekly benefits and medical benefits; and (iv) denying his post-trial procedural rights.
|aDISCUSSION

Standard of Review

It is well settled that factual findings in workers’ compensation cases are subject to the “manifest error” or “clearly wrong” standard of appellate review. Seal v. Gaylord Container Corp., 97-0688, p. 4 (La.12/2/97), 704 So.2d 1161, 1164. In applying the manifest error— clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Seal, 97-0688 at p. 4, 704 So.2d at 1164. Where two permissible views of the evidence exist, a fact finder’s choice between them can never be manifestly erroneous or clearly wrong. Id. If the fact finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, 96-2840, p. 8 (La.7/1/97), 696 So.2d 551, 556.
Louisiana Workers’ Compensation law is to be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1006 (La.1989). To establish entitlement to workers’ compensation benefits, a claimant must prove by a preponderance of the evidence that an accident occurred during the course and scope of his employment; the accident caused his injuries; and the injury caused his disability. West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1147 (La.1979). For an employee to establish entitlement to temporary total disability benefits, he must prove by clear and convincing evidence, unaided by a presumption of disability, that he is physically unable to engage in any employment, regardless of its nature, and including employment while working in pain. La. R.S. 23:1221(1)(c). Coats v. American Tel. and Tel. Co., 95-2670, p. 8 (La.10/25/96), 681 So.2d 1243, 1247. The burden of proving the existence of a fact by clear and convincing evidence requires that its existence be highly probable, that is, much more probable than its non-existence. Scherer v. Interior Plant Design, 98-702, pp. 4-5 (La.App. 3 Cir. 10/28/98), 724 So.2d 797, 800.

Issue One: Whether the WCJ erred by finding that Mr. Alphonso failed to prove that he continued to be disabled as a result of his job-related injury of March 14, 2000.

Mr. Alphonso argues that the standard of review is not whether he is generally “disabled” or generally capable of “engaging in employment,” but whether he is disabled for the specific purpose of continuing the employment in which he was employed at the time of the accident. Specifically, Mr. Alphonso contends that he never asserted that there was no work he could perform; rather, he contends that his injuries and pain medication prevent him from returning to the physically demanding and Federally regulated commercial trucking industry.
Louisiana Revised Statute 23:1221 provides the following on when compensation shall be paid for temporary total disability or permanent total disability:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the *505 employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (l)(a) of this Paragraph, compensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot | ^employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (l)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subpar-agraph (l)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee’s physical condition has improved to the point that continued, regular treatment by a physician is not required.
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subpar-agraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or | ^employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
*506 (d) Notwithstanding any judgment or determination that an employee is permanently and totally disabled, if such employee subsequently has or receives any earnings, including, but not limited to, earnings from odd-lot employment, sheltered employment, or employment while working in any pain, such employee shall not receive benefits pursuant to this Paragraph but may receive benefits computed pursuant to Paragraph (3) of this Section, if applicable.
(e) The issue of permanent total disability provided herein shall not be adjudicated or determined while the employee is engaged in employment pursuant to R.S. 23:1226(G), but such employment shall not prevent adjudication or determination of the employee’s right to any other benefits otherwise provided in this Chapter; however, the employee shall not by virtue of employment pursuant to R.S. 23:1226(G) be deprived of the right to determination or adjudication of permanent total disability herein at a time when he is not engaged in such employment.
After a close reading of Louisiana’s Workers’ Compensation law, we find no merit to Mr. Alphonso’s argument that the WCJ erred when she failed to find that he was not physically disabled for his duties as the driver of an 18-wheeler. As stated above, the question is not whether Mr. Alphonso can return to work as an 18-wheeler driver but whether he can prove by clear and convincing evidence that he is physically incapable of engaging in any employment, including employment while working in pain.
At trial, Mr. Alphonso admitted that he has been quite active since his March 2000 accident. Specifically, on direct examination, Mr. Alphonso testified that he had picked up boxes for his wife’s Karaoke Company, that he had worked on his car and truck, and that he had driven a taxi-cab part-time. Further, on cross-examination, Mr. Alphonso admitted he engaged in the following activities subsequent to his work related accident: jumping his brother-in-law’s vehicle with battery cables; removing bucket seats out of an old Cadillac; helping his brother! 7in-law push cars several times; and picking up Karaoke speakers and books. We conclude that this evidence alone indicates that the WCJ was not clearly wrong in finding that Mr. Alphonso had not proven by clear and convincing evidence that he was disabled and unable to return to any employment. It is worth reiterating that the existence of pain is not a pertinent factor in the issue of disability benefits.
Nevertheless, the WCJ’s judgment fails to determine whether Mr. Alphonso is capable of returning to his pre-injury occupation of driving 18-wheelers. As argued by Mr. Alphonso, is it questionable whether Mr. Alphonso can meet the strict physical standards and get the medical certification required under the Department of Transportation and the Code of Federal Regulations in order for him to drive 18-wheelers. Under the Code of Federal Regulations Title 49 § 391.41(b)(7), a person is physically qualified to drive a commercial motor vehicle if that person “has no established medical history or clinical diagnosis of rheumatic, arthritic, orthopedic, muscular, neuromuscular, or vascular disease which interferes with his/her ability to control and operate a commercial motor vehicle safely.” We therefore remand the case to the office of Workers’ Compensation for consideration under La. R.S. 23:1226, Rehabilitation of injured employees. As stated under La. R.S. 23:1226, Rehabilitation of injured employees:
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning *507 wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
B. (1) The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs. The first appropriate option among the following must be chosen for the worker:
(a)Return to the same position.
ls(b) Return to a modified position.
(c) Return to a related occupation suited to the claimant’s education and marketable skills.
(d) On-the-job training.
(e) Short-term retraining program (less than twenty-six weeks).
(f) Long-term retraining program (more than twenty-six weeks but not more than one year).
(g) Self-employment.
(2) Whenever possible, employment in a worker’s local job pool must be considered and selected prior to consideration of employment in a worker’s statewide job pool.
(3) The employer shall be responsible for the selection of a vocational counsel- or to evaluate and assist the employee in his job placement or vocational training. Should the employer refuse to provide these services, the employee may file a claim with the office to review the need for such services in the same manner and subject to the same procedures as established for dispute resolution of claims for workers’ compensation benefits.
C. (1) Rehabilitation services required for disabled workers may be initiated by:
(a) An insurer or self-insured employer by designating a rehabilitation provider and notifying the office.
(b) The office by requiring the insurer or self-insured employer to designate a rehabilitation provider.
(c) The employee, through a request to the office. The office shall then require the insurer to designate a rehabilitation provider.
(2) Rehabilitation services provided under this Part must be delivered through a rehabilitation counselor approved by the office.
D. Prior to the workers’ compensation judge adjudicating an injured employee to be permanently and totally disabled, the workers’ compensation judge shall determine whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education.
E. When it appears that a retraining program is necessary and desirable to restore the injured employee to suitable gainful employment, the employee shall be entitled to a reasonable and proper retraining program for a period not to exceed twenty-six weeks, which period may be extended for an additional period not to exceed twenty-] ¡¡six additional weeks if such extended period is determined to be necessary and proper by the workers’ compensation judge. However, no employer or insurer shall be precluded from continuing such retraining ■beyond such period on a voluntary basis. An injured employee must request and begin retraining within two years from the date of the termination of temporary total disability as determined by the treating physician. If a retraining program requires residence at or near the facility or institution and away from the employee’s customary residence, reason *508 able cost of board, lodging, or travel shall be borne by the employer or insurer. A retraining program shall be performed at facilities within the state when such facilities are available. Refusal to accept rehabilitation as deemed necessary by the workers’ compensation judge shall result in a fifty percent reduction in weekly compensation, including supplemental earnings benefits pursuant to R.S. 23:1221(3), for each week of the period of refusal.
F. Temporary disability benefits paid pursuant to R.S. 23:1221(1) shall include such period as may be reasonably required for training in the use of artificial members and appliances and shall include such period as the employee may be receiving training or education under a retraining program pursuant to this Section.
G. The permanency of the employee’s total disability under R.S. 23:1221(2) cannot be established, determined, or adjudicated while the employee is employed pursuant to an on-the-job training or a retraining program as provided in Subsections B and E of this Section.
Accordingly, we remand this case to the office of Workers’ Compensation in order for it to consider whether rehabilitation services are needed and whether Mr. Alphonso can in fact return to the Federally Regulated trucking business, or whether he must return to some modified position,

Issue Two: Whether the WCJ erred by finding that Mr. Alphonso committed fraudulent statements while applying for his compensation benefits.

BTT argues that Mr. Alphonso violated La. R.S. 23:1208 and has therefore forfeited his entitlement to any benefits. BTT urges that surveillance evidence of Mr. Alphonso establishes that claimant was performing various activities, which contradicts his disability claim that he was unable to work. BTT argues that the surveillance indicated he pushed a disabled automobile; jumped up and down | inrepeatedly on an automobile hitch while attempting to fasten it; and lifted and carried a karaoke machine and speakers.
La. R.S. 23:1208 authorizes forfeiture of benefits upon proof that: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The party who requests that the benefits be forfeited must show that the employee’s statements were not only false, but they must also that the statements or misrepresentation were willful and deliberately done with the intent to obtain benefits. Resweber v. Haroil Const. Co., 94-2708 (La.09/05/95), 660 So.2d 7. All of these requirements must be present before a claimant can be penalized. Nolan v. Rawls Farming Co., 35,086 (La.App.2d Cir.10/31/01), 801 So.2d 524, writ denied, 02-0001 (La.03/15/02), 811 So.2d 910. Because this statute is penal in nature, it must be strictly construed, both in its substantive ambit and in its penalty provisions. Chevalier v. L.H. Bossier, Inc., 95-2075 (La.07/02/96), 676 So.2d 1072.
Upon review of the record, we find that the WCJ erred in her finding that Mr. Alphonso’s conduct, acts and representations violated La. R.S. 23:1208 and that his workers’ compensation benefits were forfeited.[1] Although the videotaped surveillance of claimant did in fact show Mr. Alphonso pushing a disabled automobile; jumping up and down on an automobile hitch while attempting to fasten it; and lifting and carrying a karaoke machine and speakers, we fail to find evidence indicating that Mr. Alphonso willfully made *509 false representations in order to receive benefits. In fact, Mr. Alphonso testified at trial that subsequent to his job related injury, he engaged in the following activities: helping his wife with her Karoke business, driving to the casino’s in Mississippi on several occasions, In working on his car and truck, and helping his brother-in-law with his repo business. Mr. Alphonso testified that if the activities hurt him too much, he would quit, take some medication, and would lie down. Mr. Alphonso testified that the pain would subside after he took the medicine and rested for a few hours. Further, the videotaped surveillance does not indicate what Mr. Alphonso can do on a whole daily basis. Overall, Mr. Alphonso’s testimony does not evince an attempt to give false statements for the purpose of obtaining workers’ compensation benefits. Consequently, we find sufficient evidence in the record to determine that Mr. Alphonso did not forfeit his right to compensation. Accordingly, we find it was manifest error for the WCJ to find that BTT had made a prima facie showing that Mr. Alphonso has violated the provisions of La. R.S. 23:1208 in that he made a false statement or representation; that it was willfully made; and that it was made for the purpose of obtaining workers’ compensation benefits.

Issue Three: Whether the WCJ erred in failing to ñnd that BTT was unreasonable, arbitrary and capricious for terminating his weekly benefits and medical benefits.

Mr. Alphonso asserts that the WCJ erred in refusing to award penalties and attorney fees against BTT. According to Mr. Alphonso, BTT’s termination of his workers’ compensation benefits was arbitrary and capricious because there was no basis for the discontinuance of benefits. We disagree.
Mr. Alphonso seeks attorney fees and penalties against BTT for the termination of his benefits in March 2001. As such, this case is essentially a claim for discontinued benefits under La. R.S. 23:1201.2, not a claim for untimely benefits under La. R.S. 23:1201. As stated by this Court in Hobson v. East Jefferson General Hospital, 2002-1212, p. 25, (La.App. 4 Cir. 1/8/03), 837 So.2d 149, 163, “[t]his is dis-positive of the question of penalties because La. R.S. 23:1201.2 does not provide for penalties.” In making this statement, this Court adopted the analysis found in Lejeune v. Lawrence Habetz Roofing Co., 2000-1743, p. 4-5 (La.App. 3 Cir. 4/4/01), 782 So.2d 1181, 1184:
The supreme court recently discussed the difference between Louisiana Revised Statutes 23:1201.2 and 23:1201(F), stating: In instances where the employer fails to commence payment of benefits, penalties and attorney’s fees are authorized under La. R.S. 23:1201 F, unless the claim is reasonably controverted. See McCarroll v. Airport Shuttle, Inc., 00-1123 (La.11/28/00), 773 So.2d 694. However, because the instant case involves discontinuation of benefits rather than failure to provide benefits, La. R.S. 23:1201.2, not La.R.S. 23:1201 F, applies. See Williams v. Rush Masonry, Inc., 98-2271, p. 6 (La.6/29/99), 737 So.2d 41, 45 (“[sjince this 1995 amendment, Section 1201.2 now addresses solely the discontinuance of payment of claims, while Section 1201 now addresses solely the timeliness of commencement of benefit payments and timeliness of continued payments.”) J.E. Merit Constructors, Inc. v. Hickman, 00-943, p. 5 (La.1/17/01); 776 So.2d 435, 437 n. 6 (alteration in original).
Hobson, 837 So.2d 149, 163. Further, although the Workers’ Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. See International Harvester Credit Corp. v. Seale, 518 So.2d 1039, 1041 (La.1988).
*510 Thus, for Mr. Alphonso to recover attorneys fees, he must show that BTT’s decision to discontinue benefits in March 2001 was arbitrary and capricious. In Hobson, this Court also quoted the Lejeune case in its analysis of when an employee’s decision to discontinue benefits was arbitrary and capricious. As stated in Hobson:
Louisiana Revised Statute 23:1201.2 provides that reasonable attorney’s fees are awarded as a penalty under the workers’ compensation law when an employer discontinues payment of benefits, and “such discontinuance is found to be arbitrary, capricious, or without probable cause.... ” “Arbitrary and capricious behavior is willful and unreasonable action, without consideration and regard for the facts and circumstances presented.” J.E. Merit, 776 So.2d at 43738. “An award of attorney’s fees in a workers’ compensation case is essentially penal in nature, as it is intended to discourage indifference and undesirable conduct by employers and insurers.” Id. “Attorney’s fees should not be imposed in doubtful cases, where a bona fide dispute exists as to the employee’s entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative.” Id. Furthermore, Louisiana Revised Statute 23:1201.2 does not provide for an assessment of penalties in the case of discontinuance of payment. Insurance Co. of North America v. Labit, 99-2448, 99-2449 (La.App. 1 Cir. 11/15/00); 772 So.2d 385.
Hobson, 837 So.2d at 164, citing Lejeune, 782 So.2d at 1184.
In this case, BTT discontinued benefits in March 2001 when it disputed whether Mr. Alphonso’s job-related injury prevented him from returning to employment. BTT hired an investigator to conduct video surveillance, which indicated that Mr. Alphonso was in fact capable of standing, walking, bending, and carrying objects. Based on these facts, it was reasonable for the WCJ to conclude that there was evidence on which BTT could reasonably rely upon to terminate benefits. Finding no error in the judgment of the WCJ, we conclude that BTT’s decision to discontinue benefits was not arbitrary and capricious.
For the foregoing reasons, we affirm that portion of the judgment below, which found that Mr. Alphonso failed to prove that he continued to be disabled as a result of his job-related injury. We reverse that portion of the judgment below, which found that Mr. Alphonso forfeited his rights to workers’ compensation under La. R.S. 23:1208. Further, we remand the case for the office of Workers’ Compensation to determine whether Mr. Alphonso is capable of returning to his pre-injury employment and whether he is entitled to rehabilitation services. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ARMSTRONG, J., concurs.

. In this case, the WCJ failed to give reasons for imposing statutory forfeiture.